BUTTERIS, Administratrix, Respondent, vs. MIFFLIN AND
LINDEN MINING COMPANY, Appellant.

*October 16—November 5, 1907.*

*Trial: Special verdict: Jurors: Impeaching special findings: New trial: Discretion: Master and servant: Death of servant: Contributory negligence: Appealable orders.*

1. In an action for the death of a servant, after the return of a special verdict containing a finding that plaintiff's intestate was guilty of want of ordinary care which contributed to produce his death, the jury were polled, and, in answer to inquiry from the court, each replied that it was his understanding that deceased was negligent, that his negligence contributed to produce his death, and that the written answer to that question of the special verdict was his answer thereto. Plaintiff subsequently filed affidavits of four jurors, in substance, that they did not intend to return a verdict convicting deceased of contributory negligence and the special verdict in that respect was not as they intended it should be; that they intended to return a verdict which would entitle plaintiff to recover, did not discover the mistake until after the verdict was rendered, and that they supposed until the verdict was rendered that the jury had returned a verdict which would entitle plaintiff to judgment. *Held*, that the affidavits did not tend to correct a mistake in expressing the verdict actually agreed upon by all the jurors, and had no other effect than to impeach the verdict itself.

2. After a special verdict affidavits of four jurors were filed tending to show that the answer to one question was contrary to their intention, and on motion the court set aside the verdict and granted a new trial "upon the ground that the answer of the jury" to that question "was not as four of said jurors intended it should be." *Held*, that there was nothing in the record to warrant an inference that the new trial was granted within the discretionary power of the court.

3. In an action for the negligent killing of a servant the jury found, in answer to a question of the special verdict, that plaintiff's intestate was guilty of a want of ordinary care contributing to his death. Plaintiff interposed a motion for a new trial and defendant a motion for judgment upon the verdict. Under the evidence, stated in the opinion, it was *held* that the only infer-

ence of fact that could be deduced was that deceased had know-ingly and voluntarily placed himself in a position of danger and in violation of the rule of the master, which resulted in no other conclusion than that decedent's want of care contributed to cause his death, and hence it was error to grant a new trial.

4. In such case, in passing on the motion for judgment, it devolved upon the court to look into the evidence and determine whether the contributory negligence of deceased was established by un-contradicted evidence, and, if this was the state of the evidence, the defendant was entitled to judgment as matter of law, ir-respective of what the evidence might establish as to all the other issues in the case.

5. In an action against a master for the death of a servant caused by the breaking of a drawbar of a car whereby it was precipi-tated upon deceased down a shaft in the master's mine, it ap-peared, among other things, that deceased had been in defend-ant's employ continuously for a number of years and had acted as shift boss in control of the men and the work in the mine, that he had instructed the men under him not to follow a car up the shaft, and that he had informed them of the danger in-cident thereto. *Held,* that the fact that the return of the car had been delayed for a long time did not justify decedent in following it up the shaft to ascertain whether it had been de-railed.

6. In such case, after the loaded car had left decedent's place of operation at the foot of the shaft, the danger of following it was a continuing one until it should return or until he was in-formed there was no danger from the car.

7. An order denying a motion for judgment on a verdict is not ap-pealable, and hence on appeal from such an order there is noth-ing to review.

APPEAL from an order of the circuit court for Iowa county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

An action for damages brought by the plaintiff as adminis-tratrix of the estate of Harry Butteris, deceased, against the *Mifflin and Linden Mining Company,* a corporation existing under the laws of this state. Damages are claimed upon the ground that the defendant negligently caused the death of the decedent while he was in its employ. The defendant denied this charge of negligence and asserts that his death

was caused by his want of ordinary care. The jury found that the decedent, while in defendant's employ and while he was working in an inclined shaft of defendant's mine, was injured on May 18, 1906, by being struck by an ore car which had become detached from a hoisting cable at the dumping place of the car on the surface of the ground at some distance from the mouth of the shaft and had run back through the shaft to the bottom of the mine, and that the car became detached by the breaking of the drawbar of the car. The bar is claimed to have been defective before it actually broke, in that it was cracked by being bent by the cable pulling down upon it while the car was being drawn up the incline to the dump, and that this downward pull was due to the fact that the pulley over which the cable passed was located back of the top end of the incline and about on a level with it. It was found that the defendant's superintendent did not exercise ordinary care in permitting the car to be used at this time, and that such negligence proximately concurred in causing the death of Butteris, and that a want of ordinary care on the part of the deceased contributed to produce his death. The jury assessed the damages in the case at $2,500.

After verdict plaintiff submitted to the court the affidavits of four of the jurors, and upon them moved the court for a new trial. These affidavits all state that:

"Deponent did not intend to return a verdict finding the deceased . . . guilty of contributory negligence nor of want of ordinary care, and that the special verdict in that respect was not as this deponent intended it should be; that this deponent intended to return a verdict which would entitle the plaintiff to a judgment of $2,500, and this deponent did not discover his mistake until after the verdict was rendered; that this deponent supposed until after the verdict was rendered that the jury had returned a verdict which would entitle the plaintiff to $2,500 damages."

The court thereupon made an order, upon condition that plaintiff pay the taxable costs within ninety days, that the verdict be set aside and a new trial be granted,

"upon the ground that the answer of the jury to question No. 7 was not as . . . four of said jurors before whom said action was tried intended it should be, and that said four jurors did not intend to return a verdict finding the deceased . . . guilty of contributory negligence nor of want of ordinary care, and that said four jurors did not discover the mistake until after the verdict was rendered."

The record discloses that when the jury delivered their verdict into court and before they were discharged it was read aloud as rendered, and that plaintiff's counsel then requested that the answer to question 7 be changed from "Yes" to "No." Thereupon the court read the question and the answer, and then addressed the jury, saying:

"The Court: I understand by the answer to that question that you find that Harry Butteris . . . was negligent and that his negligence contributed to produce his death. Is that what you mean? Juror: That's it, I believe. Court: That is the understanding of all of you, is it? Jurors: Yes, sir."

The court then suggested to plaintiff's counsel that he could have the jury polled if he desired, and at the request of plaintiff's counsel the jury was then polled by reading to each juror the seventh question and answer and propounding to each one the inquiry: "Is this your answer to that question?" To this each juror replied in the affirmative. Thereafter during the term and before a motion for a new trial had been made, defendant's counsel moved for a judgment upon the special verdict dismissing the complaint. This motion was denied. This is an appeal from the order setting aside the verdict and granting a new trial.

For the appellant there was a brief by *Kopp & Brunckhorst,* and oral argument by *A. W. Kopp.*

For the respondent the cause was submitted on the brief of *Fiedler & Fiedler.*

SIEBECKER, J. The order setting aside the verdict and granting a new trial states that it is grounded upon the affidavits of the jurors before whom the action was tried, and that the order is made because the answer to question 7 of the special verdict, finding the deceased guilty of a want of ordinary care which contributed to cause his death, is not as four jurors "intended it should be," and that they "did not intend to return a verdict finding" this fact. An examination of the affidavits discloses that they do not present a situation analogous to that in the case of *Wolfgram v. Schoepke,* 123 Wis. 19, 100 N. W. 1054. There the jury, in answering a question in the special verdict, through inadvertence inserted an affirmative answer instead of the negative one upon which all of the jurors had agreed and which they supposed was inserted in the verdict before its delivery into court. It is there held that the trial court properly received and considered the jurors' affidavits as evidence of what was in fact the verdict agreed upon by the jury, for the purpose of determining whether the verdict as returned into court correctly expressed the verdict found by the jury. In arriving at this conclusion the court in no way departed from the well-recognized rule that jurors cannot impeach their own verdicts. The court there observed:

"Is the written paper filed, or the agreement which the jury reach, the verdict? We think the latter is what is intended when we say the jurors cannot impeach it. The former, like most records or writings, is but the expression or evidence of some mental conception. Hence it may well be said that a showing that such writing is not correct is not impeachment of the verdict itself."

The facts of the instant case in no way tend to establish such a case. Here the four jurors assert that through mistake they assented to a verdict which they did not intend, and by their own affidavits they seek to impeach it by showing that it is not the verdict they intended to render or agree

to. We cannot conceive how the evidence adduced can have
any effect other than to impeach the verdict itself. In no
aspect of the case does it tend to correct a mistake in ex-
pressing the verdict actually agreed upon by all the jurors.
The material statements in the affidavits are to the effect that
these jurors had a different intention from the one expressed
in the verdict, and that they were mistaken as to the effect
of the finding the jury had actually agreed upon. But either
statement results in an impeachment of the verdict actually
agreed upon. This is not a correction of their verdict, but
is an impeachment of it such as the law does not permit.

"The general rule is very ancient, and often reiterated,
that the statements of the jurors will not be received to es-
tablish their own misconduct or to impeach their verdict."

The question was fully discussed and the authorities col-
lected in *Wolfgram v. Schoepke, supra.* See, also, *Owen
v. Portage Tel. Co.* 126 Wis. 412, 105 N. W. 924.

Respondent asserts that the trial court acted within its
discretionary power in awarding the new trial and that its
action can only be disturbed when it appears that the court
abused such discretion. We find nothing in the record to
warrant the inference that the new trial was granted within
the discretionary power of the court. The record is clear
that the motion was granted solely because of an alleged mis-
take of the jurors in rendering their verdict. However, there
is another reason why the motion for a new trial cannot stand
upon this ground. The appellant moved for judgment upon
the verdict dismissing the complaint. The verdict includes
a finding that the deceased was guilty of a want of ordinary
care contributing to cause his death. In passing upon this
motion it devolved upon the court to look into the evidence
and determine whether such fact was established by the un-
contradicted evidence, and, if this was the state of the evi-
dence, then appellant would be entitled to judgment as a mat-
ter of law, irrespective of what the evidence might establish

as to all the other issues in the case. The evidence in the case upon this issue is clear and uncontradicted and is to the effect that the deceased as a miner had been in the defendant's employ continuously for a number of years up to the time of the accident, and had acted as shift boss in control of the men and the work in the mine; that he was informed of defendant's rule in the conduct of its business that no person working in the mine was to go up the shaft while loaded cars were being operated; that he instructed the men under him not to follow such a car up the shaft; and that he informed them of the danger incident thereto. It is also established that at the time in question he followed a loaded car up the shaft, and that while he was thus engaged the car became detached from the draw cable, returned down the shaft, collided with him, and produced his death. From these facts but one inference can be deduced, namely, that he knowingly and voluntarily placed himself in a position of danger and in violation of a rule of the defendant; and in law but one conclusion is permissible, namely, that decedent's want of care contributed to cause his death.

It is contended by respondent that the decedent was absolved from any negligence attributable to this conduct because the return of the car had been delayed for so long a time that he was justified in following it up the shaft to ascertain whether it had been derailed. Under the facts and circumstances it cannot be reasonably said that he was justified in such a course of conduct. It does not appear that such had been the practice before this time, nor was it necessary for him to do so in order to communicate with the operator of the mine outside and thus learn the position of the car on the track. After the loaded car had left his place of operation at the foot of the mine the danger of following it was a continuing one until it should return or until he was informed that there was no danger from the car. The state of the evidence leaves no ground for dispute but that dece-

·dent was guilty of a want of care in disregarding the defendant's rule for the conduct of its business and in voluntarily and knowingly placing himself in the dangerous position where the car struck him, and that his conduct in these respects contributed to cause his death. From this it results as a matter of law that decedent was guilty of contributory negligence. *Hulien v. C. & N. W. R. Co.* 107 Wis. 122, 82 N. W. 710; *Buckmaster v. C. & N. W. R. Co.* 108 Wis. 353, 84 N. W. 845; *Chybowski v. Bucyrus Co.* 127 Wis. 332, 106 N. W. 833.

The order denying appellant's motion for judgment on the verdict is not appealable; hence there is nothing to review as to this order. *Mills v. Conley,* 110 Wis. 525, 86 N. W. 203.

*By the Court.*—The order appealed from granting a new trial is reversed, and the cause remanded for further proceedings according to law.