IMPERIO and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

*April 12—April 29, 1913.*

*Appeal: Questions considered: Criminal law: Homicide: Justification: Aiding and abetting: Degree of offense: Review on appeal: Evidence: Verdict: Impeachment: Affidavits of jurors.*

1. In general, an assignment of error which is not deemed by counsel to be of sufficient importance to warrant argument will be passed as inconsequential.

2. The fact that an officer does not act technically within his rights in making an arrest without warrant, furnishes no justification or excuse to the persons arrested, having knowledge of his official character, for committing a homicide in order to effect an escape.

3. Where two persons fleeing together from arrest were apprehended by an officer, and while being held in custody one, in an attempt to escape, drew a revolver and fired upon and killed the officer, while his companion, evidently knowing his purpose, actively aided in effecting it although he used no weapon, there was no error in instructing the jury not to convict the latter of any less offense than the one who fired the fatal shot.

4. If there is any evidence in a criminal action warranting submission of the question of defendant's guilt to the jury, it will suffice on appeal to support a conviction.

5. Affidavits of jurors, except as to matters outside the jury room or some mistake in framing the verdict so that it does not correctly report what was agreed upon, cannot be used as a basis for setting the verdict aside.

6. Under no circumstances can a juror be permitted to impeach a verdict by affidavit to the effect that while he understood the effect of the verdict he did not, when he agreed thereto, believe it was right.

ERROR to review a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Affirmed.*

The accused were informed against as having, on the 6th day of July, 1911, at Vilas county, Wisconsin, killed John Radcliffe, pursuant to a premeditated design to effect his death. In due course, they were tried, resulting December 23, 1911, in a verdict of guilty of the full offense charged and judgment accordingly was rendered, which is now sought to be reviewed.

*Frank P. Regner,* for the plaintiffs in error.

For the defendant in error there was a brief by the *Attorney General, George E. O'Connor,* district attorney, and *M. B. Rosenberry,* assistant district attorney, and oral argument by *Mr. O'Connor* and *Mr. Rosenberry.*

MARSHALL, J. The evidence established, or tended to establish, these facts: July 5, 1911, the accused, *Antonio Im-*

*perio,* kept a house of ill repute for his brother, in Oneida county, and was informed by the sheriff that some trouble was in prospect because of a particular woman harbored there, brought to the place by the accused, *Philippi Roberti.* Thereupon the latter and *Imperio* departed to leave the state. The same day a warrant was issued to apprehend *Imperio* for keeping a house of ill-fame and a warrant was also issued to apprehend *Roberti* for an offense of somewhat similar grade. The undersheriff, with the warrants, made unsuccessful search for the accused and, being satisfied that they had fled from the county and were probably somewhere in the adjoining county of Vilas, telephoned John Radcliffe, the sheriff of that county, to take them into custody if found there, informing him of the warrants for their apprehension. Up to the time they were finally apprehended, they were endeavoring secretly to flee from this state into the state of Michigan, going sometimes on foot, sometimes by automobile, and sometimes by horse and carriage, stopping sometimes at a hotel and sometimes at a place or places of ill-fame. Upon the Vilas county sheriff being requested as aforesaid, taking one Carter and one Hansen as assistants, he went to the near-by village of Conover, explaining on the way, the purpose of the journey. Soon after arriving there, the three came upon the accused seated together upon a bench in front of the village hotel. Radcliffe immediately informed them of his official character and took them into custody. Thereupon he left them in charge of his assistants while he went to write the sheriff of Oneida county of the situation. In the meantime the accused were further assured that he was the sheriff of Vilas county and they conversed together, more or less, in the Italian language. Upon Radcliffe returning, *Imperio* induced him and his assistants to remove from the position in front of the hotel a short distance, *Roberti* accompanying and the two conversing in the Italian language in an excited manner. After the change of location, *Imperio* demanded to

have the warrant read to him and, upon finding that Radcliffe
had none, he denied the latter had any right to hold him.
Upon his giving additional evidence of an intention to resist
further detention, Hansen commanded him to throw down
any weapon he had and a search of *Roberti* was commenced
by Radcliffe. *Imperio* interfered and quickly drew a re-
volver and commenced discharging it. Radcliffe's two as-
sistants made efforts to protect him and *Roberti* was active
to prevent them from doing so. Soon Radcliffe fell from the
effect of a bullet wound inflicted by *Imperio* and quickly
died. Hansen was struck by two or more of the bullets.
*Imperio* did not cease using his weapon until some seven shots
had been fired and it was evident to him and his associate that
they had, for the time being, overcome their captors. They
then fled from the place. Shortly thereafter they were ap-
prehended in the woods under such circumstances as to indi-
cate that they had ceased efforts to escape. There was also
evidence tending to show that *Roberti,* as well as *Imperio,* had
a revolver and that, between them, they were armed with a
butcher knife.

On the case thus made, by a permissible view of the evi-
dence, the theory of the state was that the accused conspired
to escape from custody, thinking that Radcliffe had no right
to detain them without a warrant, and to use their weapons to
that end with fatal effect, if necessary, and that when *Imperio*
commenced shooting, *Roberti* knew his purpose and interfered
with the efforts of Radcliffe's assistants to protect him in
order to aid in executing such purpose, which included, as in-
dicated, killing Radcliffe, if necessary to effect the escape.

It does not seem advisable to refer, in detail, to the multi-
tude of errors assigned on behalf of plaintiffs in error. The
great majority are submitted without argument. In that
manner substantially the whole of a quite lengthy charge is
divided up into sections and we are asked to review and pass
upon it. In general, an assignment of error which is not
deemed by counsel to be of sufficient importance to warrant

something more than a mere raising of a question for consideration, will be passed as inconsequential.

We have examined the alleged errors submitted with argument, as well as those submitted without argument, sufficiently to discover that there is no efficient merit in them and little which calls for discussion to support the conclusion to which we have arrived. Nothing is advanced in the printed, and nothing was on the oral, argument constituting any justification for the homicide. There was ample evidence to warrant the jury in deciding that the accused knew the deceased was acting officially in taking them into custody. So if the sheriff did not act, technically, within his rights, that gave the accused no justification or excuse whatever for the homicide.

Complaint is made because the jury were instructed not to convict *Roberti* of any lesser offense than *Imperio*. Reliance is placed upon *Miller v. State,* 139 Wis. 57, 119 N. W. 850. The principle of that case does not have any application to the facts here. The evidence, now, indicates, without room for fair controversy, that the two men acted in concert from before the first shot was fired and that *Roberti* must have known *Imperio's* purpose and aided in effecting it. Under the circumstances, it was immaterial who handled the weapon which did the mischief. One was, necessarily, as guilty as the other.

The principal argument on the merits of the case is in support of a claim that the evidence did not warrant finding *Roberti* guilty of murder in the first degree. On that, it does not seem to be appreciated, that, if there was any evidence warranting submission of the question to the jury, there is enough to support the finding on appeal. Such matter cannot turn on a mere preponderance of the evidence. The jury had a right to reject the story of the accused persons and believe that of the survivors of the encounter. Accepting the verdict, as we must, as to the truthfulness of the testimony of such survivors, the substance of which appears in the statement, there is no reasonable explanation of *Imperio's* conduct

other than that he intended to commit the homicide when he fired into the person of Radcliffe and that his codefendant was acting in concert with him at that time.

Complaint is made because the trial court refused to grant a new trial as to *Roberti* upon the affidavits of some jurors impeaching their verdict. That assignment of error is ruled in favor of defendant in error by the familiar principle that affidavits of jurors, except as to matters outside the jury room or some mistake in framing the verdict so as to report what was agreed upon, cannot be used as a basis for setting the verdict aside. Only within quite narrow limits can a juror impair his verdict by affidavit or anything he may say or do after having been discharged from the case. Under no circumstances can he be permitted to efficiently contradict it, as was attempted in this case, by confessing that he appreciated the effect thereof as rendered but did not, when he agreed thereto, believe it was right. *Hempton v. State,* 111 Wis. 127, 86 N. W. 596; *Wolfgram v. Schoepke,* 123 Wis. 19, 100 N. W. 1054. An affidavit to the effect that the verdict as reported is not as agreed upon and an affidavit directly impeaching the verdict, as that the juror united in delivering a particular verdict, but did so contrary to his best judgment, are quite different. The latter is not permissible. *Butteris v. Mifflin & L. M. Co.* 133 Wis. 343, 113 N. W. 642.

There does not seem to be any other matter mentioned by counsel for plaintiffs in error requiring special mention. As before indicated, notwithstanding many matters, suggested, might properly have been passed without attention because of their being a mere claim of error, on account of the importance of the case and the earnestness of its presentation for plaintiffs in error on the oral argument, we have examined all the complaints sufficiently to discover whether there is any real merit therein which could form a legitimate basis for disturbing the judgment as to either of the accused, and do not find any.

*By the Court.*—The judgment is affirmed.