## NOBLE et al. v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. August 4, 1924.)

### No. 4193.

1. **Criminal law ⬦⟹1177—Where terms ·of imprisonment run concurrently, case not reversed, if conviction legal on any one count.**

   Where defendants were convicted under numerous counts, and sentenced to pay a fine and be imprisoned 30 months, terms of imprisonment to run concurrently, if they were legally convicted on any one count, there can be no reversal for errors affecting any of other counts.

2. **Banks and banking ⬦⟹257(3)—Evidence held to support conviction of officers of national bank for making false entries.**

   In a prosecution against two officers of a national bank for making false entries, in violation of Rev. St. § 5209, as amended by Acts Sept. 26, 1918, § 7 (Comp. St. Ann. Supp. 1919, § 9772), evidence *held* to support a conviction of both defendants.

3. **Criminal law ⬦⟹956(10)—Refusal to grant new trial, because of claimed expression of ill will by juror towards one defendant, held not abuse of discretion.**

   District Court's refusal to grant a new trial, on affidavits that one of the jurors had expressed in strong terms his ill will toward one defendant, *held* not abuse of discretion, where court did not believe the affidavits.

4. **Criminal law ⬦⟹1134(4)—Decision on motion for new trial not assignable error.**

   Trial court's decision on motion for a new trial is not assignable as error.

5. **Criminal law ⬦⟹636(7)—Giving additional instructions in voluntary absence of defendants not error.**

   Giving of additional instructions at jury's request, in absence of defendants who were not in custody, *held* not error.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Robert B. Noble and another were convicted of making false entries, in violation of the National Banking Laws (294 Fed. 689), and they bring error. Affirmed.

J. W. Speer, of Great Falls, Mont., for plaintiff in error Noble.

H. C. Smith, of Helena, Mont., and H. R. Eickemeyer and La Rue Smith, both of Great Falls, Mont., for plaintiff in error Peters.

John L. Slattery, U. S. Atty , and Ronald Higgins and Wellinton H. Meigs, Asst. U. S. Attys., all of Helena, Mont.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. [1] The plaintiffs in error, hereinafter called the defendants, were convicted under an indictment which charged them, as officers of the Commercial National Bank of Great Falls, Mont., with violation of section 5209, Rev. Stat., as amended by section 7 of the Act of September 26, 1918, 40 Stat. 972 (Comp. St. Ann. Supp. 1919, § 9772). They were each found guilty under numerous counts, and on each count each defendant was sentenced to pay a fine and to be imprisoned 30 months, the terms of imprisonment to

run concurrently. It follows that, if they were legally convicted on any one count, there can be no reversal for errors affecting any of the other counts. The first 16 counts charged false entries in the records of the bank. The remaining counts charged false entries in reports to the Comptroller of the Currency. Among the entries in the bank records which were charged to be false were two of $50,000 each, alleged to have been made on December 19, 1921, and again on February 27, 1922, and again on June 26, 1922, and again on September 2, 1922.

[2] It is the contention of the defendants that there was no testimony whatever that on December 19, 1921, the bank was not entitled to charge the First National Bank of St. Paul and the Bank of California of Tacoma each with $50,000, nor testimony that on that date the defendants did not each deposit $50,000 with their bank, and the same contention is made as to the other dates on which the records are charged to have been falsified. The contention ignores many items of testimony which tended to show that the entries were false. It was shown that Peters had been a director and the attorney for the bank for a number of years, and that Noble was a director and was also manager from 1920 until February, 1922; that when the American Bank & Trust Company of Great Falls closed its doors, December 3, 1921, the defendants were apprehensive of the effect upon their bank, which had at the time a low reserve; that as the result of their consultation on the subject they decided to endeavor to borrow money from other banks. Peters made an effort to borrow money from the First National Bank of St. Paul, Minn., offering the joint note of himself and Noble in the sum of $50,000. Noble attempted to borrow a like amount from the Bank of California at Tacoma on the joint note of the defendants. The terms of the letters which were sent indicated that they were acting in harmony to accomplish their purpose. Their efforts failed. Then, in order to show a greater reserve in their bank than then existed, Noble directed Funk, the assistant cashier, to credit the accounts of each of the defendants with $50,000, and debit each of the banks to whom application had been made for loan with the sum of $50,000 each, and later made directions that similar false entries be made in the books of the bank. There was evidence, also, furnished by the letters which the outside banks sent in answer to the applications for loans, in which they rejected the same, and there was testimony that on December 19, 1921, the Commercial National Bank of Great Falls had a balance of only $1,874.12 in the St. Paul bank, and that 10 days later it owed the St. Paul bank $2,561.61. The vice president of the Northwestern National Bank of Portland testified that no credit of any kind had ever been extended by that bank to the Great Falls bank or to the defendants. The assistant cashier of the Bank of California at Tacoma testified that his bank never had made any loans to the Great Falls bank, nor extended any credit to it after December 1, 1921.

The defendant Peters contends that he is not chargeable with responsibility for the entries made after December 19, 1921, that there was no evidence to connect him with later entries, and that all the evidence indicated that he intended to limit his connection to the transaction of

the month of December. In the appeal which Peters made to the First National Bank of St. Paul he wrote:

"Mr. Noble and I have been in close conference during the past week, and we have taken into consideration every angle, and we believe there is no cause for alarm; but we do feel that we should show a strong statement for the next call, and Mr. Noble and I should like to have you use our joint note for this period, and place the same to the credit of the Commercial National Bank. We, of course, do not contemplate using any part of it, and will take up the note at maturity. Ordinarily I do not approve of this method, but I feel that under all the circumstances we are justified in handling the matter this way."

In his application to the vice president of the Northwestern National Bank of Portland, Peters wrote:

"I have been in close touch with Bob (Noble) during this period, and in discussing our affairs we have reached the conclusion that it is of the utmost importance to show the strongest statement possible for the next call, which will probably be made during the latter part of the month. If you can, we should like to have you place to the credit of the bank the proceeds of our note for $50,000, which we inclose herewith, which we, of course, would not make any further use of, and would be liquidated on the date at the date of maturity. Ordinarily I would not approve of this method, but this is an emergency, and I believe justified under the circumstances."

There is, it is true, very little direct evidence in the record to show personal knowledge and participation of the defendant Peters in the false entries and the false reports to the Comptroller, and possibly it may be true that he did not know that to each of the two banks from which he had endeavored to obtain money $50,000 was credited back about three weeks later, and that he did not know that the December, 1921, loan was not made, and that he did not ask Noble if he had been able to secure the loan on the joint note of himself and Noble, and that after December 25, 1921, he never discussed the condition of the bank with Noble, and that he never looked at the monthly statements sent him from his bank until after he was indicted, and did not notice a large deposit like $50,000 to his credit on December 19, 1921, or notice later that the same was drawn out, or that he was credited with the deposit of $100,000 on February 27, 1922—in brief, that he did not know that between December 19, 1921, and September 20, 1922, there had been put to his account $350,000 in the shape of deposits and the same amount had been checked out; that he signed the report to the Comptroller of March 10, 1922, without reading it, and without knowledge of its purport, and signed the later reports in ignorance of what they represented as to the condition of the bank. But the jury, in view of the evidence of his and Noble's interblended activities, and some items of evidence against him, may have declined to give credence to the testimony of Peters, and if, in so doing, they reached the conclusion that Peters was guilty as charged, we are not convinced that the judgment should be disturbed for want of supporting evidence.

No exception was taken to the instruction to the jury that:

"So far as Peters is concerned, there is no evidence that he had anything to do with it, except and unless you infer it from the circumstances. If he and Noble were engaged in the illegal transactions in December, 1921, if they were moving in the direction of and causing false entries to be made in December,

1921, the necessity still existed for the same sort of practice, and you have the right to infer that the concert and combination between them theretofore still existed down to this line of transactions, and as long as it continued, and until you are satisfied from the evidence that they had been severed and disrupted and no longer continued."

There is also the positive testimony of Carlson, who on February 1, 1922, assumed the position of vice president of the Great Falls bank at the persuasion and inducement of Peters and Noble. He testified that after the 1st of February Noble came to the bank and told him that he and Peters "have now made arrangements again for the call"; that he (Carlson) was aware of the fact that entries were made charging the banks with large sums, and of credit given to Peters and Noble as shown by the books, and he testified:

"I discussed that practice with the defendants Noble and Peters. I asked them if they had made the proper arrangements for the credit, and they told me they had. I told them at that time it was an objectionable practice."

[3, 4] It is contended that it was abuse of the discretion vested in the trial court to deny the motion for a new trial which was based upon an affidavit of two affiants that the juror Wollman had expressed in strong terms his ill will toward the defendant Noble. The court below gave no credence to the affidavits, and upon the evidence was not convinced that the juryman was biased, but, on the contrary, was of the opinion that the defendants had a fair and impartial jury. We can discover no abuse of discretion, nor do we find anything in the record to take the case out of the established rule that the decision of the trial court on a motion for a new trial is not assignable as error. Holmgren v. United States, 217 U. S. 509, 521, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778.

[5] Nor do we find error in the fact that, after the jury had retired to consider of their verdict, they twice came to the court at their own request, and in the absence of the defendants and their counsel received further instructions from the court. The defendants were not in custody; they were free to come and go, and the fact that they were not present in court when the jury asked for and received further instructions is not ground for reversing the judgment, no error being pointed out in the additional instructions which were thus given. Hagen v. United States (C. C. A.) 268 Fed. 344; Diaz v. United States, 223 U. S. 442, 455, 32 Sup. Ct. 250, 56 L. Ed. 500, Ann. Cas. 1913C, 1138; Dodge v. United States, 258 Fed. 300, 169 C. C. A. 316, 7 A. L. R. 1510.

We find no error. The judgment is affirmed.