STATE, Appellant, vs. BILLER and others, Respondents.

*October 10—November 5, 1952.*

For the appellant there were briefs by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

*Ralph W. Steller* of Hayward, for the respondents.

CURRIE, J.   The state contends that it was error for the trial court to grant a new trial on the ground of a mistake by the jury in arriving at their verdicts, and, that by so doing, the trial court permitted the jurors to impeach their own verdict.

The affidavits of the jurors contain no allegations that any mistake was made by the foreman of the jury in recording in the verdicts that which constituted the answers determined upon by the jurors. That which is alleged in the affidavits to have been a mistake was therefore not a mistake in recording the verdicts of the jury, but a mistake of the jurors as to the legal effect of their verdicts.

This court has many times determined that jurors cannot impeach their own verdict in the manner that was permitted in the instant case. The reasons for so holding are well set forth in the decision of the court in *Brophy v. Milwaukee E. R. & T. Co.* (1947), 251 Wis. 558, 566, 30 N. W. (2d) 76, as follows:

"The remaining question is whether or not the verdict is lawfully impeached by the subsequent affidavits and statements of the jurors. The general rule is that jurors will not be permitted to impeach a verdict by affidavit. Ordinarily their power over the verdict ceases when they are discharged. Only within narrow limits can they impeach the verdict by what they say after having been discharged. If a mistake has been made so that the verdict is not correctly reported, then evidence showing what the jury actually did agree on is to be considered. In a sense that is not impeaching the verdict, for the verdict is the agreement which the jurors reach in their deliberations and not the written paper which is filed if, through a clerical error or otherwise, that does

not express the jurors' agreement. *Edmister v. Garrison* (1864), 18 Wis. *594, *603; *Butteris v. Mifflin & Linden M. Co.* (1907), 133 Wis. 343, 347, 113 N. W. 642; *Imperio v. State* (1913), 153 Wis. 455, 460, 141 N. W. 241; *Holub v. Cootware* (1919), 169 Wis. 176, 170 N. W. 939; *Woodward v. Leavitt* (1871), 107 Mass. 453; 27 R. C. L., Verdict, pp. 896–901, secs. 68–74.

"There is sound public policy behind this general rule prohibiting impeachment of their verdict by the jury. The formality and dignity of the court proceedings are intended to provide as appropriate a surrounding as possible for the achievement of justice. The jury is kept apart from influences which might prejudice its decision. If jurors, after being discharged and after mingling with their friends who may have expressed approval or disapproval of the jury's verdict, are to be allowed to impeach that verdict, the unbiased evaluation of the evidence which the solemn court proceedings are intended to facilitate, will have ceased to control decisions. In talking after the trial to those who did not like the verdict, a juror might be inclined to express a wish that it had gone the other way. He may honestly think that if he had it to do over again he would vote differently. He may admit that he would have voted differently if he had known what the legal effect of the verdict would be. It is likely that there should be such reactions in some cases. But such subsequent reactions are not to be allowed to impeach the verdict. If they were allowed, the verdict would cease to be a decisive thing, putting an end to litigation; the jurors would become subjects of post-trial chicanery, improper persuasion, and possibly bribery. In any event, objective discovery of the truth would be hampered, not promoted."

*Brophy v. Milwaukee E. R. & T. Co., supra,* was a civil and not a criminal action, but the principle therein announced is equally applicable to criminal actions. The case of *Imperio v. State* (1913), 153 Wis. 455, 460, 141 N. W. 241, involved a criminal prosecution and conviction of the two defendants, Imperio and Roberti, for murder, and the court in its opinion in that case stated (p. 460):

"Complaint is made because the trial court refused to grant a new trial as to Roberti upon the affidavits of some jurors impeaching their verdict. That assignment of error is ruled in favor of defendant in error by the familiar principle that affidavits of jurors, except as to matters outside the juryroom or some mistake in framing the verdict so as to report what was agreed upon, cannot be used as a basis for setting the verdict aside. Only within quite narrow limits can a juror impair his verdict by affidavit or anything he may say or do after having been discharged from the case."

Therefore, it is our conclusion that the order setting aside the verdicts and granting a new trial, on the ground that the jury made a mistake in rendering such verdicts, cannot be sustained.

However, counsel for defendants rightly contends that under the provisions of sec. 274.12 (2), Stats., the defendants are entitled to review of any errors, the correction of which would support the order appealed from, without the necessity of the defendants filing a notice of review. It is the position of defendants' counsel that errors were committed by the trial court in several respects which would sustain the order granting a new trial.

The trial court instructed the jury, and the jury retired to the juryroom at 10:19 o'clock a. m., June 5, 1952. At 2:25 o'clock p. m. of the same day the jury were returned to the courtroom at their request for additional instructions, and such additional instructions were given. It is contended that it was error to give such supplemental instructions in the absence of three of the defendants. No claim is made that defendants' counsel and the fourth defendant were not present in the courtroom at the time such additional instructions were given to the jury. The written motion for a new trial made in behalf of the defendants alleges that the three defendants who were absent from the courtroom at the time of the giving of such supplemental instructions, were at such time lying out on the courthouse lawn awaiting the verdict. It is

our conclusion that by such voluntary absence from the court-room these three defendants waived their right to be personally present at the giving of such additional instructions.

In *Hill v. State* (1864), 17 Wis. *675, *678, a case involving a prosecution for larceny, the jury returned its written verdict while the defendant was temporarily out of the courtroom, and he did not return until the verdict had been received and the jury discharged. His counsel was present, however, and had the jury polled. This court held that every person tried for a felony has the right to be present at the whole trial and it would be erroneous if he should be deprived of this right without his consent, and stated:

"But however this may be, there does not seem to be any sound reasoning by which a prisoner indicted for felony, having the privilege of being present at the trial, and being in a condition to exercise it, may not voluntarily waive the right, so far at least as to be temporarily absent from the room during some portion of the progress of the trial. It has accordingly been held in several cases, the doctrine of which seems to us reasonable, that he may waive such right. *Wilson v. State*, 2 Ohio St. 319; *McCorkle v. State*, 14 Ind. 39; *State v. Wamire*, 16 id. 357.

"Such being our conclusion, we think it must be assumed upon this record that the prisoner was voluntarily absent at the moment the verdict was received."

The precise question raised in the instant case was involved in *Scott v. State* (1925), 113 Neb. 657, 659, 660, 204 N. W. 381. In that case the plaintiff in error was convicted of assault with intent to kill and sentenced to a term of four years. It appeared that after the jury had deliberated for some time the judge, upon his own motion, called the jurors into open court and read to them a written supplemental instruction concerning their duty as jurors in arriving at a verdict. It was complained that this was done without notice to, and in the absence of, the defendant, who was out on bail. His counsel were present and objected to the proceed-

ing, but not on the ground of defendant's absence. The conviction was affirmed on the ground that the defendant had waived his right to be present by voluntarily absenting himself, and on the further ground that no prejudice resulted to the defendant, even though the actions of the court were technically erroneous.

Another case involving the identical point raised here is *United States v. Noble* (D. C. 1923), 294 Fed. 689, affirmed, *Noble v. United States* (9th Cir. 1924), 300 Fed. 689. The defendants, who were convicted of making false entries in violation of the national banking laws, moved for a new trial on the ground, among others, that supplementary instructions were given to the jury by the court without notice to, and in the absence of, defendants and their counsel. The district court disposed of this contention in the following language (pp. 691, 692):

"Whether these defendants were tried for misdemeanors or felonies, the law is that, though a defendant is entitled to be present during all the proceedings of the trial, this right may be and is waived, if he on bail voluntarily absents himself during the trial's progress. For otherwise no trial but could be designedly defeated, at least where statutes permit bail to be enjoyed throughout the trial. . . .

"The reason for the rule that all proceedings of the trial shall be with accused or counsel present fails when they are voluntarily absent, and the rule fails with it. It is the duty of parties and counsel to wait upon the court, not the court upon them. This is emphasized in criminal trials wherein defendants, as here, are at large only by indulgence of the court, and wherein they and counsel take the benefit of the rule and practice that, at their own hazard, they may absent themselves during reasonable hours, and also during unreasonable hours in which they are expressly advised the court may sit.

"*In these circumstances judge and jury are not to cool their heels about the corridors until accused and counsel condescend to come into court; nor is there any obligation upon*

*the court to dispatch messengers to the four quarters of the compass to search out and solicit them to do so.* The court may presume accused and counsel are present or voluntarily absent, and so may lawfully proceed to conclude the trial, whether it be to give instructions or to receive verdicts." (Emphasis supplied.)

Defendants' counsel further contends that the complaint and information are not couched in the words of the statute and are fatally defective. The docket of the magistrate who conducted the preliminary examination discloses that defendants' counsel did raise this objection at the preliminary examination, but in the absence of any bill of exceptions the record does not disclose whether a proper motion raising such objection was made before the circuit court. We therefore assume that if such objection had been properly raised before the trial court, the trial court would have permitted an amendment of the complaint and information to conform with the statute as permitted by secs. 355.09 (8) and 355.14 (3), Stats. Furthermore, sec. 357.16 (1) provides as follows:

"The trial court may allow amendments in case of variance between the complaint or indictment or information and the proofs in all cases where the variance is not material to the merits of the action. *After verdict the pleading shall be deemed amended to conform to the proof if no objection based on such variance was timely raised upon the trial."* (Emphasis supplied.)

The defendants were charged with violating sec. 26.05, Stats., reading as follows:

*"Timber larceny.* Any person who unlawfully cuts or directs or contracts for the cutting of forest products on the lands of another as defined in the preceding section and who does not own or control adjoining land; or who, though owning adjoining land bearing merchantable forest products, *cuts on an acreage substantially in excess of his adjoining land;* or who, as part of an unlawful cutting· operation, removes or destroys any survey monument or bearing tree,

shall be punished as provided in section 343.17 for the larceny of property of the same value." (Emphasis supplied.)

Defendants' counsel contends that because the jury found that each defendant cut only $133.85 worth of timber, such timber would not be an acreage *"substantially in excess"* of his own adjoining land. As there is no bill of exceptions containing a transcript of the testimony, and there is nothing in the record before us to indicate whether the defendants did own lands adjoining the Flambeau state forest, it is impossible to determine whether the defendants were prosecuted under the portion of the statute preceding the first semicolon, or the alternative provision appearing between the first and second semicolons. The purpose of including the value of the timber cut in the form of verdict was in order that the trial court might determine the severity of the sentence to be imposed, as provided in sec. 343.17, Stats., in the event the jury returned a guilty verdict, and not in order that there be a separate finding as to whether a substantial acreage of timber had been cut. Even if the record had disclosed that the prosecution was under the alternative provision of sec. 26.05, relating to an adjoining owner who "cuts on an acreage substantially in excess of his adjoining land," the sum of $133.85 found by the jury to be the amount of timber cut by each defendant does not indicate the size of the acreage on which the cutting took place. We therefore find no merit in counsel's position on this point.

It is the further position of defendants' counsel that the supplemental instructions given by the trial court to the jury were erroneous. However, counsel set forth in his written motion for a new trial the specific grounds upon which such motion was based, and error in the instructions was not one of such specified grounds. It is elementary that such a question cannot be raised for the first time on appeal. *Graves v. State* (1860), 12 Wis. *591, *595.

As a further assignment of error, defendants' counsel contends that sec. 26.05, Stats., is unconstitutional on the ground that the words *"substantially in excess"* are indefinite and uncertain. In *State ex rel. Zent v. Yanny* (1943), 244 Wis. 342, 345–347, 12 N. W. (2d) 45, this court had before it the constitutionality of sec. 340.271 (2) making it negligent homicide to cause the death of a person, not wilfully or wantonly, but by the operation of a vehicle at an excessive rate of speed, or in a reckless, careless, or negligent manner constituting or amounting to a *"high degree of negligence;"* and this court held that the fact that the jury's judgment as to the degree of negligence determines the guilt or innocence of the accused is not grounds for holding the act vague and indefinite. *"Substantially in excess"* is no more indefinite and uncertain than *"high degree of negligence."*

It is also urged on behalf of defendants that sec. 358.12 (1) (b), Stats., giving the state the right to appeal from an order granting a new trial in a criminal case, is unconstitutional. No authorities are cited in support of such contention, nor does counsel point out to us in what respect he contends the statute to be unconstitutional. In the absence of any further enlightenment from counsel on this point we are unable to perceive in what respect this statute violates any provision of the state and federal constitutions. Counsel does state that he is unable to find a single Wisconsin case in which this court has reversed the granting of a new trial in a criminal case. The state's brief, however, cites in reply to this argument the case of *State v. Hanks* (1948), 252 Wis. 414, 31 N. W. (2d) 596, in which this court did reverse an order granting the accused a new trial and remanded the cause with directions to reinstate the verdict and impose sentence.

The last contention advanced by defendants' counsel is that the granting of the new trial can be sustained in the interests

of justice, and it therefore was not an abuse of the trial court's discretion in granting a new trial. The answer to this argument is that the trial court did not grant the new trial in the interests of justice, but because of an alleged mistake made by the jury in its verdicts.

*By the. Court.*—Order reversed, and cause remanded with directions to reinstate the verdicts and impose sentence upon the defendants.