STATE, Respondent, v. DICKSON, Defendant: KORB, Appellant.

*No. State 82. Argued November 30, 1971.—Decided January 6, 1972.*
(Also reported in 193 N. W. 2d 17.)

534

For the appellant there was a brief by *Campbell, Brennan, Steil & Ryan, S. C.,* and *Thomas J. Basting* and *James E. Welker,* all of Janesville, and oral argument by *Mr. Basting.*

For the respondent the cause was argued by *Robert J. Vergeront,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J.   It is apparent from the record that there was no conduct on the part of Attorney Korb that constituted a contempt of court.

Sec. 256.03, Stats., itemizes what acts might be punished as criminal contempts.[1]   The itemization is exclu-

[1] In referring to this statute, we do not retreat from the rationale of *State v. Cannon* (1928), 196 Wis. 534, 221 N. W. 603, and *State v. Cannon* (1929), 199 Wis. 401, 226 N. W. 385, which

sive, and the preamble to the statute specifically provides that persons may be found guilty only for the stated acts and for no other. Sec. 256.03 (1) provides that conduct may be punished as contempt which is:

"Disorderly, contemptuous or insolent behavior committed during its sittings, in its immediate view and presence, and directly tending to interrupt its proceedings or to impair the respect due its authority."

The record reveals that Attorney Korb's conduct was at all times restrained and lawyer-like and evinced nothing but a respectful, though firm, disagreement with the position taken by the judge. Sub. (3) of the same statute provides that a court of record shall have the power to punish as criminal contempt the "Wilful disobedience of any process or order lawfully issued or made by it."

In the instant case, there was no order of the court which could have been disobeyed. The record shows that Judge TRAEGER relied upon the document bearing the caption, "Circuit Court Chambers," and rubber-stamped with the name of the clerk of court. A direction issued by the clerk is not an order of the court in the sense used in legal procedures. Sec. 269.27, Stats., makes it clear that orders issued "out of court" may be made only by judges or, in the appropriate cases, by court commissioners. Nowhere in the statutory recitation of the powers and duties of a clerk of court is there any grant of power to issue orders over his own signature.

It is well recognized in Wisconsin that a clerk of court may not exercise any judicial powers. *Wisconsin Lumber & Supply Co. v. Dahl* (1934), 214 Wis. 137, 252 N. W. 714, held that, in the absence of a specific grant of power, a clerk of court could not authorize the calendaring of

discussed the authority of Wisconsin courts to maintain their dignity, transact their business, and accomplish the purpose of their existence, as a matter of inherent power, separate from any legislative authorization.

cases for trial. The limitations on the powers of a clerk of court were further defined in *Pacific National Fire Ins. Co. v. Irmiger* (1949), 254 Wis. 207, 212, 36 N. W. 2d 89, wherein we said:

". . . the acts of the clerk of court are ministerial and clerical, and he may not exercise judicial power except in accordance with the strict language of a statute conferring such power upon him."

It is thus apparent that the clerk could not issue a directive having the authority and dignity of a court order and, in fact, in the instant case the clerk attempted no such usurpation of power. It did not purport to be an order "by the court." It was a mere notice signed by the clerk and carried with it none of the qualities of a properly issued order of a court.

Judge TRAEGER conceived the clerk's notice to be a court order. It simply was not such a document. It is equally apparent, although Judge TRAEGER did not rely on the letter he sent to Attorney Korb, that the letter contained no unequivocal direction that the defendant be present at the so-called pretrial conference. Statements of Judge TRAEGER in that letter were so qualified that it could have been interpreted, as it was by Attorney Korb, to authorize him to appear without his client if he had plenary authorization to assert a plea and appear at trial.

The conclusion of this court that the notices issued over the signature of the clerk of court on March 17th and on April 21st were not court orders is sufficient to require a reversal of the judgment of conviction. It appears appropriate, however, to emphasize that the power of a judge to punish for contempt is limited not only by the statute referred to above but by well-established principles of common law. We have pointed out that there can be no contempt, in the legal sense, of a clerk of court. It is equally true that legally the offense of contempt of a judge is unknown. *See* Beilfuss, *Contempt of Court,* Wisconsin Bar Bulletin (April 1958), 10, 12.

*Rubin v. State* (1927), 192 Wis. 1, 6, 7, 211 N. W. 926, articulated the role of the judge from that of the court while discussing a contempt committed by an attorney. We said therein:

"Courts are institutions set up by society for the purpose of administering justice, the attainment of which is the ultimate end of organized government. Because of the grave and delicate nature of their functions, society, from time immemorial, has accorded to courts the greatest respect. This respect proceeds from an intuitive and deep-seated sense of propriety. Human instinct decrees it as the appropriate attitude for society to assume towards the most exalted institution of its creation. This respect is not accorded to the Judge—the man. The Judge presiding over a court is one character. The Judge in his chambers another. The Judge in his home or on the street quite another. The Judge as an individual may or may not be accorded the respect which by common consent belongs to the institution—the Court. The Judge as the individual is not entitled *per se* to any particular degree of respect. He is entitled only to that regard to which his standing and character in the community entitles him. As an individual he has no power to coerce respect. It is the institution—the Court—to which belongs that degree of respect commensurate with the place which it occupies in the scheme of organized society. The Judge and the Court are not identical. The Judge is a man. The Court is an institution. It requires something more than a Judge sitting on the bench to constitute a Court. It requires, in addition, the existence of conditions authorizing the exercise of the powers of a court. It requires the presence of that upon or over which the powers of a court may be exerted, namely, a controversy involving legal or human rights. It requires the presence of litigants, generally attorneys, usually officers, such as bailiff, clerk, etc., and frequently jurors. To constitute a court, some of these elements must concur with the presence of a presiding judge. It is this institution, as distinguished from the Judge, that merits and enjoys the respect of society."

The transcript in the instant case reveals that Judge TRAEGER was not, at the time of the alleged contempts, acting in the role of judge presiding over a court. The

meeting was held not in the courtroom and not for the purpose of adjudicating the rights of the parties, but rather was an informal plea-bargaining session, conducted in the lawyer's conference room.

The primary contention of the defendant's brief is that the circuit court was without jurisdiction to order a pretrial conference because statutory provision is made for pretrial conferences only in civil cases. The state's primary contention is that a circuit court has inherent power to order pretrial conferences in criminal cases, and the failure to comply with the pretrial order therefore constituted contempt of a lawful order of the court. Since there was no order of the court, both of these arguments miss the mark as applied to the facts of this case.

We agree with the defendant to the extent that the statutes do not specifically authorize the holding of pretrial conferences in criminal cases. We agree with the state in its contention that a judge acting as a court may, as a part of his duties in the orderly administration of justice, order a pretrial conference in criminal cases where the circumstances render a conference of that nature appropriate.

A pretrial conference, however, should never be held for the purpose of giving a judge an opportunity to coerce a plea of guilty. It is not designed to make final disposition of the merits of the case. Judge TRAEGER misconceived the function of a pretrial conference when he stated:

". . . the purpose of the pretrial is with the thought in mind of trying to get the parties reconciled to a complete termination of the matter. The purpose being to avoid a trial."

He also displayed his misunderstanding of the purpose of a pretrial conference when he indicated that it was intended to be a session at which counts were dropped and a plea of guilty was to be entered as a *quid pro quo* for concessions made by the prosecutor. Such a pretrial

conference would be nothing more than a "plea-bargaining" session presided over by the judge. We stated in *Young v. State* (1971), 49 Wis. 2d 361, 367, 182 N. W. 2d 262, relying on earlier cases:

". . . this court has made it clear that trial courts are not to participate in plea bargains. In this state there is to be no courtroom counterpart of the fixed prizefight in which the participants waltz through a pre-arranged script to a predetermined outcome."

Nevertheless, a pretrial conference in criminal cases is highly desirable to advise the judge and the parties of the real issues of the case so that there may be an expeditious and orderly trial. The American Bar Association Project on Minimum Standards for Criminal Justice in its Approved Draft, 1970, *Discovery and Procedure Before Trial*, pages 123, 124, enumerates the circumstances under which a pretrial conference should be held in criminal cases:

**"5.4 Pretrial Conference.**
"(a) Whenever a trial is likely to be protracted or otherwise unusually complicated, or upon request by agreement of counsel, the trial court may . . . hold one or more Pretrial Conferences, with trial counsel present, to consider such matters as will promote a fair and expeditious trial. The accused shall be present unless he waives this in writing. Matters which might usefully be considered include:
"(i) making stipulations as to facts about which there can be no dispute;
"(ii) marking for identification various documents and other exhibits of the parties;
"(iii) waivers of foundation as to such documents;
"(iv) excision from admissible statements of material prejudicial to a codefendant;
"(v) severance of defendants or offenses;
"(vi) seating arrangements for defendants and counsel;
"(vii) use of jurors and questionnaires;
"(viii) conduct of voir dire;

"(ix) number and use of peremptory challenges;

"(x) procedure on objections where there are multiple counsel;

"(xi) order of presentation of evidence and arguments where there are multiple defendants;

"(xii) order of cross-examination where there are multiple defendants; and

"(xiii) temporary absence of defense counsel during trial.

"(b) Conferences should be recorded. At the conclusion of a conference, a pretrial order, or memorandum of the matters agreed upon, should be signed by counsel, approved by the court and filed, which should be binding upon the parties at trial, on appeal, and in postconviction proceedings unless set aside or modified by the court in the interests of justice. However, admissions by an accused if present should bind the accused only if included in the pretrial order and signed by the accused as well as his attorney."

We adopt such standard and conclude that its implementation lies within the inherent power of the courts of general jurisdiction of the state. It should be noted, however, that the power does not extend to the compulsory presence of the defendant, desirable as his presence may be in most cases. The power does extend to attorneys who are officers of the court and who are obliged to obey lawful court orders. The standard adopted by the American Bar Association Project on Minimum Standards for Criminal Justice is not unlike, in its rationale excluding the defendant from the compulsion of the court, the interpretations given by this court to sec. 957.07, Stats. 1967:

"**Defendant to be present.** A defendant accused of a felony shall be personally present during the trial. A defendant accused of a misdemeanor may at his written request and by leave of court be tried in his absence if represented by his attorney duly authorized for that purpose."

An examination of the cases decided by this court shows that the purpose of this statute is to protect the defendant—that there may not be a trial in absentia *without the consent of the defendant.* The annotations to this statute reveal a multitude of cases which show that the purpose is to guarantee the right of a *defendant* to be present during trial. A right under proper circumstances may be waived expressly or by conduct. *Ramer v. State* (1968), 40 Wis. 2d 79, 84, 161 N. W. 2d 209, certiorari denied, 394 U. S. 989, 89 Sup. Ct. 1476, 22 L. Ed. 2d 764; *State v. Biller* (1952), 262 Wis. 472, 55 N. W. 2d 414; *State v. Sasse* (1888), 72 Wis. 3, 38 N. W. 343.

This, of course, does not mean that in an appropriate case a trial judge may not through the use of bail, its revocation, or by bench warrant compel the presence of the defendant at trial.

A pretrial conference, however, is not a part of a trial, and sec. 957.07, Stats. 1967, relied upon by the state, cannot be transmuted from a device to shield the defendant into a sword to compel his presence at a pretrial conference.

The defendant also argues herein that the judge was without jurisdiction to make a finding of contempt because of the prior interposition of an affidavit of prejudice. We agree with Judge TRAEGER in his refusal to honor the affidavit where the only evidence of service was that upon an assistant district attorney. This case is not in an appropriate posture to determine the extent to which affidavits of prejudice may be utilized in contempt proceedings. *Woods v. Winter* (1948), 252 Wis. 240, 31 N. W. 2d 504; *John F. Jelke Co. v. Beck* (1932), 208 Wis. 650, 242 N. W. 576.

We are satisfied that, had the notice issued by the clerk of court been in fact an order, the violation of which could be punished by contempt, Judge TRAEGER abused his discretion in this case. He relied on a rule which

he had heretofore enforced in his own court in another county. The very authorization for Attorney Korb to appear for trial in the absence of his client had already been filed on the return date of the citation by the judge of the local county court in accordance with local practices. We stated in *Hauer v. Christon* (1969), 43 Wis. 2d 147, 150, 168 N. W. 2d 81, that a judge on special assignment to a county which had adopted its own local rules should be bound by the rules of the jurisdiction in which he then presides. We said, "We think a judge on such an assignment is bound by the local rules and should, when in Rome, do as the Romans do."

It should be pointed out that the record reveals no evidence of a formal rule sanctioning the practice of an attorney to appear without his client. The record does make clear, however, that such was the practice in Rock county and that practice was relied upon by attorneys there.[2]

Moreover, we conceive it to have been an abuse of discretion summarily to have found Attorney Korb in contempt when Korb stated that in his view he had complied with the terms of the judge's letter. Judge TRAEGER stated, "No matter what you may have thought or you may have figured would be right just is not a matter of concern to this court." The interpretation placed upon the letter by Attorney Korb was at least arguably meritorious, and in view of the vague nature of the letter, summary contempt without a showing that the alleged violation was unlawful and done with the contumacious intention of flouting the order of the court constituted an abuse of discretion.

Insofar as the rights of the client Dickson were concerned, the judge's conduct interfered with the role of an

[2] For a discussion of the need for uniform rules of practice and the confusion created by the existence of local rules, *see* Wilkus, *The Mirage of Uniformity—in Probate Practice,* Wisconsin Bar Bulletin (December 1971), 42.

attorney in representing a client. As argued in the appellant's brief, the State Bar Rules and Canons of Ethics allow an advocate to:

". . . urge any permissible construction of the law favorable to his client, without regard to his professional opinion as to the likelihood that the construction will ultimately prevail." American Bar Association *Code of Professional Responsibility* (paperback 1969), p. 24, Canon 7, EC 7-4 (adopted by the Wisconsin Supreme Court with miscellaneous amendments pursuant to Rule 9 of the Rules of the State Bar of Wisconsin, and reprinted in 43 Wis. 2d at lii).

The record shows that the contempt finding was imposed upon the client Dickson not because of his absence but because the judge was piqued when he discovered the unavailability of the state's witness made it impossible to try the case. The record shows that, after knowing the defendant was not present, Judge TRAEGER nevertheless stated that the matter would proceed to immediate trial, but, upon being informed by the prosecutor that he (the judge) had excused the state trooper and that a jury trial had been requested, the judge found the defendant Dickson in contempt. The record evinces caprice constituting an abuse of discretion.

The order which Attorney Korb was found guilty of wilfully refusing to follow was not an order of the court. There was no evidence of wilful disobedience of any order or direction of the court. The court was without power to compel the presence of the defendant Dickson at a pretrial conference, and the procedures used in making the finding of contempt with respect to both the lawyer Mark L. Korb and his client Dickson evince the abuse of judicial discretion.

*By the Court.*—Judgment reversed.