WIBBELER, Appellant, vs. REED and another, Respondents.

*October 8—November 3, 1953.*

For the appellant there was a brief by *Lepp & Phillips* of Kenosha, and oral argument by *David L. Phillips.*

For the respondents there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil.*

BROADFOOT, J. Upon this appeal the plaintiff Wibbeler contends that he was not guilty of assumption of risk as a matter of law. No question of assumption of risk was submitted to the jury and no request to have such a question submitted was made. The jury was fully instructed as to the duty owed to guests by a host and as to assumption of risk by a guest. The court also instructed the jury as to the provisions of subs. (2) (a) and (2) (b) of sec. 85.40, Stats., which provide that operators of motor vehicles shall not drive at a speed greater than is reasonable and prudent under the conditions then existing, and that the operator shall drive at an appropriately reduced speed when approaching and crossing an intersection.

There was, as usual, a conflict in the testimony. The analysis of the testimony and the conclusions of the trial court therefrom are shown by the following excerpts from its memorandum decision:

"The defendant Reed testified that when she reached the 35-mile zone she reduced her speed to 35 miles an hour and continued at that rate of speed to the intersection where she applied her brakes and brought her car to a stop within a distance of about 50 feet, which was within one car length of the point where her car collided with that of the defendant, Leslie Bull. . . .

"The other plaintiff, William Wibbeler, Jr., testified that he was awake and that when the Reed car was 300 to 400 feet north of the intersection he saw the Bull car and it was then in the intersection. The Bull car had been traveling north and made a left turn in the intersection. According to his testimony the defendant Reed had been traveling around 60 to 65 miles an hour and that he felt no reduction in the rate of speed prior to the time she attempted to stop as she entered the intersection. The jury undoubtedly did not accept Wibbeler's testimony with respect to the Reed car traveling around 60 to 65 miles an hour with no reduction in speed up to the time it entered the intersection, for it seems obvious to the court as it undoubtedly did to the jury, that an automobile traveling at that rate of speed could not have been stopped within 50 feet with the application of the brakes and aided by the force of the impact with the Bull car. It seems to the court that the jury had the right to find under the evidence that there was no reduction of speed below 35 miles an hour and that entering the intersection at that rate of speed and without further reducing it constituted negligence with respect to speed, particularly as the Bull automobile was approaching and about to cross the pathway of the Reed car and that according to the testimony of Wibbeler there was opportunity for such reduction while the Reed car traveled a considerable number of feet in its approach to the intersection even though the jury did not believe that it traveled as far as 300 to 400 feet, as Wibbeler testified, after he observed the Bull car in the intersection.

". . . It was disputed as to whether the Bull car was still moving or had been stopped at the time of the impact, or just how far it had proceeded into the southbound lane of travel when the impact occurred. According to the testimony in the case the Bull car was brought to a stop with the front end projecting into the most easterly of the southbound lanes one or two feet. There was also testimony that it traveled somewhat farther into the most easterly southbound lane and there was also testimony that it was still moving when the impact occurred. Taking the testimony most favorable to the defendants, Reed and her insurer, the Bull automobile after it entered the intersection traveled across the 20-foot strip between the north and southbound lanes of travel and some distance into the most easterly of the southbound lanes. The plaintiff Wibbeler testified that when he saw the Bull car in the intersection the Reed car was 300 to 400 feet north of the intersection. The jury undoubtedly did not accept the distance of 300 to 400 feet as being correct as it is obvious that if the Reed automobile had been at a point 300 to 400 feet north, or at any point between these two figures, the Bull car would have entirely crossed the southbound lanes before the Reed car reached the point where the impact occurred and there would have been no collision. If it be assumed that the jury concluded that the Reed car was not over 100 feet from the intersection and if the jury concluded that it was traveling at the rate of 35 miles an hour, the plaintiff Wibbeler, both saw and knew the situation and if he had protested as it was his duty to do when the Reed car was at any of the distances mentioned, either the minimum or the maximum, there would have been time and opportunity at least at the rate of speed of 35 miles an hour to have brought the car to a stop and to have avoided a collision if a protest was timely made and duly heeded. It therefore seems to the court that under the admissions of the plaintiff Wibbeler, the court is in duty bound to hold that he assumed the risk incident to the speed at which the Reed car approached and entered the intersection."

We agree with the court's analysis of the speed question. It is apparent that Wibbeler was entirely mistaken and that Miss Reed's testimony is corroborated by the physical facts.

We cannot agree, however, with the trial court's conclusion that the Reed car was approximately 100 feet from the intersection when the Bull car made the left turn, thus giving Wibbeler time and opportunity to make a protest which, if duly heeded, would have avoided a collision. Miss Reed's testimony is that she was from 75 to 100 feet north of the intersection when the traffic lights turned from red to green. At that time she saw the Bull car going north on the inside or west lane of the part of the highway for northbound traffic; that Bull gave no signal of his intention to turn, but turned left suddenly as she was about to enter the intersection. The record was so clear that Miss Reed saw what was to be seen that the court did not even submit a question as to her lookout. It is apparent that she was much closer to the intersection than 100 feet and at 35 miles per hour would have been traveling at the rate of 52½ feet per second. Under these circumstances it is apparent that a protest by Wibbeler would have been futile.

A guest in an automobile has no duty with reference to the manner in which it is momentarily managed by the driver. Here the time element was very short. Had the passenger protested and had the driver taken the usual time within which to react, the accident would not have been averted. Where the evidence in a case as to assumption of risk presents an issue of fact, that issue is for the jury. There is a dispute in the instant case, and this presented an issue of fact. Had the question of assumption of risk on the part of Wibbeler been submitted to the jury there is evidence in the record that would have sustained an affirmative answer to that question. On the other hand, there is evidence in the record that would have warranted a negative answer to that question. We have here an unusual situation in that the testimony most favorable to the plaintiff is that of the defendant driver. The defendants cannot complain that the question was not submitted to the jury because they did not

request it. As the matter is presented to us the plaintiff is entitled to have the matter passed upon in the light of the testimony most favorable to him. From the record before us it cannot be said that Wibbeler did assume the risk as a matter of law.

*By the Court.*—That part of the judgment appealed from is reversed and cause remanded with directions to enter judgment in favor of the plaintiff Wibbeler against all of the defendants for the damages found by the jury, with costs.