OLSON, Appellant, vs. WILLIAMS and another, Respondents.

*April 7—May 3, 1955.*

58

For the appellant there was a brief by *Thronson, Roethe & Agnew* and *Roscoe Grimm,* all of Janesville, and oral argument by *Sidney J. Thronson.*

For the respondents there was a brief by *Roberts, Roe, Boardman, Suhr & Bjork,* and oral argument by *Walter M. Bjork.*

STEINLE, J.   Appellant contends that: (1) The evidence does not support a finding of assumption of risk on the part of Duane L. Olson; (2) that plaintiff is entitled to judgment notwithstanding the answer to the question of the special verdict relating to assumption of risk; or in the alternative (3) that a new trial be granted in the interest of justice.

Pertinent to consideration of such contention is the observation of Mr. Justice GEHL in *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 109, 62 N. W. (2d) 549, 63 N. W. (2d) 740, that:

"It is the well-recognized rule that when a jury's findings are attacked, particularly when they have had the trial court's approval, our inquiry is limited to the issue whether there is any credible evidence that, under any reasonable view, supports such findings. With the rule in mind we consider that it is necessary to recite only the testimony which supports the jury's findings. Some of it is in dispute, but as to

the disputed testimony we must recognize that it was for the jury to determine where the truth lies."

The evidence upon which respondents rely in their position that the jury was warranted in finding that Olson acquiesced in the negligent management and control of the car by Williams is as follows: The accident occurred at about one o'clock on Sunday morning, November 23, 1952, on Highway 26 at a point about one-half mile north of Fort Atkinson. The highway is of black-top-surface construction with graveled shoulders, level, runs north and south, and curves slightly to the east just south of the place where the car driven by Williams left the highway and struck a tree on the west side of the highway. No other car was involved. It had sprinkled a short while before, but at the time of the accident it was neither raining nor snowing. The roadway, however, was damp.

At the time of the accident Duane L. Olson was riding in the right front seat next to the driver, Jerry L. Williams. Wixson and Dick Williams, a younger brother of Jerry L. Williams, rode in the rear seat. These young men had been traveling together in the car since about 7 p. m. Saturday. They had ridden from Janesville to Edgerton, back to Janesville, back to Edgerton, back to Janesville, on to Beloit, and then to the vicinity of Fort Atkinson at which place they visited several taverns. Olson drank beer at one of the taverns while Jerry L. Williams and Wixson drank beer at each of them. The last place visited was Shore Crest tavern, about two miles north of the scene of the accident. On leaving this place a five-to-ten-minute argument ensued between Wixson, Olson, and Williams as to whether Wixson or Williams was to drive. They had wrangled, too, as to where they were to sit in the car. Wixson thought Williams had too much to drink. Williams nevertheless took the wheel of the car. The speed at which he drove for the two-mile stretch

to the place of the accident was about 45 to 50 miles per hour. The transmission was "howling pretty bad." Williams began immediately to weave the car from the right lane to the left and continued doing so for the entire distance traveled until striking the tree. Wixson protested to the weaving; Olson did not. Wixson told Williams to "take it easy and quit messing around." Williams persisted in weaving the car back and forth and Wixson protested again. There is evidence that as the car left the road before striking the tree, Olson hollered "we are off the road." Olson claims that he slept until the crash, but "recalled riding down the road awhile with Jerry driving" after leaving the last tavern. Olson was rendered unconscious by the accident. Although Wixson denied touching the steering wheel just before the car left the road, testimony was adduced by Williams that Wixson had done so.

For application of the defense of assumption of risk three elements must be presented: (1) A hazard or danger inconsistent with the safety of the plaintiff; (2) knowledge and appreciation of the danger by the plaintiff; and (3) acquiescence or a willingness to proceed in the face of the danger. *Groshek v. Groshek* (1953), 263 Wis. 515, 516, 57 N. W. (2d) 704.

Appellant maintains that Duane L. Olson was asleep; that the weaving had been corrected and a new danger of which Olson was not aware had been created when Wixson grabbed the wheel; that there was no time or opportunity for Olson to have protested the new sudden danger created by Wixson's interference with Williams's driving even though he had been awake.

The jury found that Williams was negligent as to management and control and that such negligence was a substantial factor in producing the injuries to Olson. Obviously, this causal negligence pertained to the weaving of the car by Williams. The jury found that Olson was not guilty of

negligence, but had acquiesced in the negligence of Williams. In the Wixson case the jury found that Williams was negligent and that Wixson was contributorily negligent. It determined that Wixson had protested against the negligence of Williams. It is plain that in the Wixson case the negligence found as to Williams pertained to the weaving of the car. It was the same negligence against which Olson had failed to protest. From the evidence the jury was warranted in believing that Williams had commenced his weaving of the car before Olson started to sleep. There is also evidence which challenges Olson's ability to have gone to sleep before the accident. These considerations were for the jury in its determination of the acquiescence question.

A guest does not assume the risk of a host-driver's sudden or momentary failure to exercise due care. *Wibbeler v. Reed* (1953), 265 Wis. 141, 60 N. W. (2d) 700. However, if the negligent act of the host-driver which causes injury is a continuance or repetition of similar negligence on his part, for which there had been occasion or opportunity to render protest, the guest-passenger, in failing to protest assumes the risk. *Webster v. Krembs* (1939), 230 Wis. 252, 258, 282 N. W. 564.

Appellant's counsel argues that the jury's affirmative answer to the acquiescence question is not supported by the evidence. Similar argument was made below in motions after verdict. The learned trial court in disposing of this contention, stated:

"The plaintiff's contention is to the effect that he was asleep when the accident happened, that it happened momentarily and that he had no opportunity to give any warning or to make any protest. Therefore, it is argued that he could not have acquiesced in the manner in which the car was being driven.

"There was evidence to show that before the plaintiff, Duane L. Olson, entered the car he had engaged in a violent

argument with the defendant Jerry L. Williams. The accident happened but a short distance down the road from where the trip began, at the Shore Crest tavern. The car had a differential which became noisy after the car attained a certain speed. The differential was producing this noise just before the accident. Just before the accident the plaintiff, Duane L. Olson, said to the driver, Jerry L. Williams, the defendant, 'You are off the road.'

"If the plaintiff was entitled to claim his somnolence as an excuse for his failure to protest there was surely a jury question as to whether or not he was in fact asleep. The jury could well have concluded that the plaintiff could not have fallen asleep so quickly in a noisy car immediately after his angry wrangle with the defendant, and that his warning to the defendant after he had left the road showed that, if the plaintiff was asleep at all, he could not have been far removed from consciousness.

"Neither can it be said that it is a verity in the case that the accident resulted from a momentary inattention or lack of control of the driver, to which no protest could have been made. It has been pointed out that in the same verdict the jury found that another occupant of the car [Wixson] did have time to make an efficient protest. Thus, the jury must have accepted as credible the evidence from which it may be inferred that the accident resulted not from a momentary lack of control but from a somewhat continuous course of conduct with respect to the management and control of the car, concerning which there would have been ample opportunity to protest. The evidence shows that the plaintiff did call the defendant's attention to the fact that he was on the shoulder; but if this was a protest, it came too late effectively to avoid the accident."

We concur in the trial court's analysis and conclusion. The facts fall squarely within the rule that if there is a continuance or repetition of similar negligence on the part of the driver for which there had been occasion or opportunity to protest, the guest by acquiescing thereto assumes the risk. *Webster v. Krembs, supra.*

Wixson was not a party to the action brought by Olson. The negligence of Wixson was not asserted in Olson's complaint. In the application for judgment notwithstanding the verdict, it is claimed on behalf of Olson that Wixson was a joint operator of the car with Williams and that there can be no finding that Olson assumed the joint negligence of Williams and Wixson. No such determination was made. In the case at bar the negligence of Williams and Olson alone was in issue. The jury found that Williams was causally negligent with respect to the accident and did not find that Olson contributed thereto. Williams had not sought contribution from Wixson. It was found that Olson assumed only the risk of the negligence of Williams. Had it not been for Olson's acquiescence, judgment could have been rendered against Williams for the entire damage sustained by Olson. The jury found that Wixson had interfered with the operation of the automobile. This finding precludes any inference that Wixson was an operator. A consideration of assumption of risk of Wixson's negligence by Olson was not before the court.

Appellant contends further that the jury's written communication to the court indicates an intention that it desired to find that there was no assumption of risk on Olson's part. It appears that the jury clearly distinguished between fault and consent. The jury obviously intended and actually did find that there was no negligence on Olson's part. It appears further that the jury intended and did find that there had been acquiescence by Olson to Williams's manner of driving. The effect of the answer respecting acquiescence was for the court and not for the jury. Under the facts found by the jury it must be held as a matter of law that Olson assumed the risk.

With respect to the application for a new trial in the interest of justice, appellant contends principally that it is apparent from the record that the jury was confused with

respect to the acquiescence question and the effect of momentary negligent operation. In its instruction, thrice given to the jury, the court stated:

". . . if such conduct or lack of management and control has persisted long enough to give him an opportunity to protest.

"However, if the act of the driver in increasing the danger or adding a new danger is done so quickly or in such manner that the guest has not sufficient time to make an efficient protest, he is then not required to make a protest which would be entirely useless. Under such circumstances the guest cannot be heard [held?] to have acquiesced in or consented to such faulty driving."

This instruction does not differ from that ordinarily submitted on the subject, and correctly states the rule with reference to excusal of protest in situations where the increased or new danger is sudden.

The question of contributory negligence on the part of Olson was submitted to the jury. No such negligence was found. By failing to find Olson negligent, the jury determined, that he "was in no way responsible for the accident." Olson's failure to have protested William's negligent manner of driving was a factual consideration for the jury as hereinbefore pointed out. The effect of such finding was of no concern to the jury.

The court consulted with counsel when formulating its written response to the jury's communication. There was no objection to the submission of the matter in this form. Plaintiff's counsel suggested that the words "or consented" be included with those "he acquiesced." The court adopted the suggestion. Plaintiff's counsel also requested that the court include in this statement a further reference to the item of "opportunity to protest." The court declined such suggestion on the basis that undue emphasis to the matter would be given thereby. We perceive no error in such regard. By participating with the court in formulating the written

statement and consenting to such means of communication with the jury, the counsel waived possible error with respect to the procedure employed in so further instructing the jury.

The document signed by the jurors and offered in support of the motion for a new trial is an attempt by the jury to impeach its own verdict. Such practice is not countenanced. It is the long-established and generally accepted doctrine that statements of jurors impeaching a verdict rendered by them will not be received where the facts sought to be shown are such as inhere in the verdict. 53 Am. Jur., Trial, p. 769, sec. 1105. In *Butteris v. Mifflin & Linden M. Co.* (1907), 133 Wis. 343, 348, 113 N. W. 642, it was said:

"The material statements in the affidavits are to the effect that these jurors had a different intention from the one expressed in the verdict, and that they were mistaken as to the effect of the finding the jury had actually agreed upon. But either statement results in an impeachment of the verdict actually agreed upon. This is not a correction of their verdict, but is an impeachment of it such as the law does not permit.
" 'The general rule is very ancient, and often reiterated, that the statements of the jurors will not be received to establish their own misconduct or to impeach their verdict.' "

The fact that the jurors now claim not to have understood the acquiescence question or the court's instructions concerning it, cannot be permitted to affect the verdict. In *Holub v. Cootware* (1919), 169 Wis. 176, 180, 170 N. W. 939, it was said:

"If verdicts thus may be impeached they have little stability. If they cannot stand because a juror is willing to say that he misunderstood a question of the special verdict they must, by the same logic, be set aside upon a statement of a juror that he did not understand the court's charge or obtained a mistaken impression of certain testimony. As said in *Dishmaker v. Heck, supra* [159 Wis. 572, 150 N. W. 951] : 'Any such rule would place every verdict at the mercy of weak or corrupt jurymen.' Verdicts must be given greater

dignity and finality than would be accorded them under such practice. Their impeachment cannot be permitted in the manner here attempted."

We agree with the trial court's observation that "in answering the questions of a special verdict the jury's duty is to find the facts according to the evidence, without any regard for the outcome of the trial. The jurors may not repudiate that finding after they have had an opportunity to learn from others the legal consequences of their verdict. A verdict cannot be set aside because the legal consequences which follow the rendition of the verdict are not what the jury expected they would be." Under modern rule the fact that the jurors misunderstood the instructions cannot be shown by their statements in an attempt to impeach their verdict. 53 Am. Jur., Trial, p. 771, sec. 1106. In *Koss v. A. Geo. Schulz Co.* (1928), 195 Wis. 243, 251, 218 N. W. 175, this court said:

" 'Let it once be established that verdicts solemnly made, and publicly returned into court, can be publicly attacked and set aside on the testimony of those who took part in their publication, and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate their finding. Jurors would be harassed and beset by the defeated party, in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside the verdict. If evidence thus secured could be used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation, and to the destruction of frankness and freedom of discussion and conference.' 1 Hyatt, Trials, sec. 835; *McDonald v. Pless,* 238 U. S. 264, 35 Sup. Ct. 783; *Holub v. Cootware,* 169 Wis. 176, 170 N. W. 939."

The trial court properly disregarded the so-called report of the jury signed and presented after the jury had been discharged in the case.

The weight and credibility of the evidence was for the jury. The verdict has had the approval of the trial court. We are constrained to conclude that there is ample evidence which

the jury was entitled to deem credible and which sustains the findings in all respects. We discover no valid basis for the granting of a new trial in the interest of justice.

*By the Court.*—Judgment affirmed.