BROPHY, by Guardian *ad litem,* and another, Appellants,
vs. MILWAUKEE ELECTRIC RAILWAY & TRANSPORT
COMPANY, Respondent.

*November 17—December 23, 1947.*

562

For the appellants there were briefs by *Kersten & McKinnon* of Milwaukee, and oral argument by *Arlo McKinnon* and *J. P. McKinnon*.

For the respondent there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, attorneys, and *William F. Schanen* of Port Washington of counsel, and oral argument by *Carl Muskat*.

FAIRCHILD, J. Several issues are raised on this appeal. They can conveniently be discussed under these three ques-

tions: (1) Should additional questions of negligence have been put to the jury? (2) Does the evidence sustain the findings of negligence? (3) Is the verdict impeached by the affidavits and statements of the jurors?

As to the first of these questions, appellants contend that a question as to respondent's negligence in maintaining an attractive nuisance or in failing to erect barriers to prevent use of the path should have been submitted to the jury. The Restatement, 2 Torts, Negligence, p. 920, sec. 339, states the rule regarding attractive nuisances this way: "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if . . . (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it." It cannot be said that the path along the railroad right of way constitutes a structure or other artificial condition maintained by the respondent. Patrick was not attracted to the path as a place to play. He was old enough and familiar enough with the surroundings to appreciate their danger. No reason is evident for applying the attractive-nuisance doctrine.

Certainly the railroad was not bound to erect barriers which would prevent use of the path. On the other hand, we recognize that it is not enough to relieve respondent of liability that notices had been posted to the effect that trespassers would be prosecuted. As long as respondent knew that such notices were generally disregarded and public use was made of the path, the law requires that the company take into account the probable presence of pedestrians and conduct its activities with reasonable regard for their safety. Restatement, 2 Torts, p. 904, sec. 334. The railroad did not deny that, in spite of the signs, frequent use was made of the path to its knowledge, and the case was tried on the theory that users of the path were therefore licensees rather than trespassers. Had the railroad

company not known of the customary use of their right of way, had they had reason to believe the signs were obeyed, they would have been held only to the degree of care an owner owes to a trespasser. However, the most that can be required of an owner who does have knowledge of others' frequent use of his premises is the exercise of reasonable care for their safety. The questions which were submitted to the jury on the matter of the railroad's negligence were such as to hold the railroad to the exercise of ordinary care, which was the proper standard under the circumstances. That being true, there was no reason to submit a further question regarding the company's negligence in failing to provide a more effective barrier against the use of the path than the signs proved to be. Had the company provided further barriers, there would have been reason for holding the company only to the degree of care owed by an owner to a trespasser. As it was, the company was held to a standard of reasonable care, or to the duty owed by an owner to a licensee rather than a trespasser.

It is further suggested that a question regarding the train's speed should have been submitted to the jury. No such question was requested at the time of the trial, and there is no evidence that the train was traveling at an excessive rate. The motorman estimated that the speed of the train was about twenty-five miles per hour. A passenger who was riding in the front seat of the train estimated its speed to be between ten and fifteen miles per hour. It is admitted that the train traveling at a moderate rate of speed could not be stopped within the distance it was physically possible for the motorman to see and the point in the road where the accident occurred. Since questions were submitted to the jury regarding the motorman's possible negligence as to lookout, giving timely warning signals, and attempting to stop the train, no rights of the appellants were prejudiced by not including a question pertaining to speed when there was no testimony tending to show the speed unreasonable.

The next important question is whether the evidence sustains the finding as to Patrick's negligence. It was found by the court as a matter of law that the appellant, Patrick, was negligent with respect to lookout. It is claimed that it was error for the court to so rule. However, the evidence justifies the ruling. Patrick admits that he did not maintain a lookout for approaching trains. He was watching only the projecting tie ends. One of his age, intelligence, and experience ought to have been aware of the dangers in following a path so close to tracks and of the importance of watching for trains. As the trial court said in his decision: "Patrick is a bright young boy of more than average intelligence. He told a truthful story and impressed the court, as he must have the jury, that for a boy of his age he was capable of exercising rather good judgment at the time of the accident." Holding him negligent with respect to lookout as a matter of law was proper. *VanLydegraf v. Scholz* (1942), 240 Wis. 599, 4 N. W. (2d) 121; *Bonniwell v. Milwaukee L., H. & T. Co.* (1921) 174 Wis. 1, 182 N. W. 468; *Goldberg v. Berkowitz* (1921), 173 Wis. 603, 181 N. W. 216; *Kollentz v. Chicago & N. W. R. Co.* (1920) 170 Wis. 454, 175 N. W. 929; *Ballard v. Bellevue Apartment Co.* (1916) 162 Wis. 105, 155 N. W. 914; *Ryan v. La Crosse City R. Co.* (1900) 108 Wis. 122, 83 N. W. 770.

One of the questions put to the jury depended on much the same facts as the question answered by the court, and the jury came to a similar conclusion. The jury found Patrick negligent in entering the subway while respondent's train was approaching. Then, too, the jury found that the negligence of Patrick with respect to lookout was a cause of the collision and Patrick's injuries.

Respondent claims that the evidence does not justify finding the motorman negligent in any respect. The testimony as to whether or not he sounded a warning and as to whether he made a timely and sufficient application of the brakes is conflicting. They were, under the circumstances present in this

case, proper questions for the jury to determine. Patrick and two passengers seated in the front of the train testified they heard no warning bell or gong. The jury might have believed from the passengers' testimony that the brakes were applied only gradually when the boy could first be seen by the motorman. The boy himself did not hear the brakes being applied until he was about to be hit.

The remaining question is whether or not the verdict is lawfully impeached by the subsequent affidavits and statements of the jurors. The general rule is that jurors will not be permitted to impeach a verdict by affidavit. Ordinarily their power over the verdict ceases when they are discharged. Only within narrow limits can they impeach the verdict by what they say after having been discharged. If a mistake has been made so that the verdict is not correctly reported, then evidence showing what the jury actually did agree on is to be considered. In a sense that is not impeaching the verdict, for the verdict is the agreement which the jurors reach in their deliberations and not the written paper which is filed if, through a clerical error or otherwise, that does not express the jurors' agreement. *Edmister v. Garrison* (1864), 18 Wis. *594, *603; *Butteris v. Mifflin & Linden M. Co.* (1907) 133 Wis. 343, 347, 113 N. W. 642; *Imperio v. State* (1913), 153 Wis. 455, 460, 141 N. W. 241; *Holub v. Cootware* (1919), 169 Wis. 176, 170 N. W. 939; *Woodward v. Leavitt* (1871), 107 Mass. 453; 27 R. C. L., Verdict, pp. 896–901, secs. 68–74.

There is sound public policy behind this general rule prohibiting impeachment of their verdict by the jury. The formality and dignity of the court proceedings are intended to provide as appropriate a surrounding as possible for the achievement of justice. The jury is kept apart from influences which might prejudice its decision. If jurors, after being discharged and after mingling with their friends who may have expressed approval or disapproval of the jury's verdict, are to be allowed to impeach that verdict, the unbiased evaluation of the evi-

dence which the solemn court proceedings are intended to facilitate, will have ceased to control decisions. In talking after the trial to those who did not like the verdict, a juror might be inclined to express a wish that it had gone the other way. He may honestly think that if he had it to do over again he would vote differently. He may admit that he would have voted differently if he had known what the legal effect of the verdict would be. It is likely that there should be such reactions in some cases. But such subsequent reactions are not to be allowed to impeach the verdict. If they were allowed, the verdict would cease to be a decisive thing, putting an end to litigation; the jurors would become subjects of post-trial chicanery, improper persuasion, and possibly bribery. In any event, objective discovery of the truth would be hampered, not promoted.

In this case the jurors heard their verdict read and answered the question of the court that it was their verdict. No further polling of the jury was requested. It is only their finding that the boy and the respondent were each responsible for fifty per cent of the total negligence that is being questioned. If there had been misconduct by the jury, or if the comparative degrees of negligence agreed upon by the jurors had been different from the 50-50 percentages reported, then there would be reason for the court to act upon that showing. However, the affidavits and verbatim statements taken from the jurors after the trial fail to show that any other percentages than 50-50 were agreed upon. Some of the jurors specifically say they thought 50-50 was agreed upon. Others say that other percentages were discussed, but there is no uniformity among their statements as to what other percentages might have been agreed upon. It is true they all signed affidavits saying they thought the boy was less negligent than the motorman, but those statements were made after they had been discharged and after they had discovered that attributing fifty per cent of the negligence to each party defeated the boy's recovery. Their sympathies might

easily have been aroused. Only if it had been clear that other percentages had actually been agreed upon by them would this be the sort of mistake which would justify changing the verdict or granting a new trial.

Because the other questions in the special verdict were answered as they were, with ample evidence to support the findings of negligence, it does not appear that injustice has been done by attributing fifty per cent of the total negligence to each party. The case is to be distinguished from *Wolfgram v. Schoepke* (1904), 123 Wis. 19, 100 N. W. 1054. There the affidavits showed that an error had been made in recording the jury's answer to a question on contributory negligence. Under the evidence before it, the court was satisfied that there was danger of injustice if judgment were entered on the verdict, so a new trial was allowed. In this case the circuit court was not convinced by the affidavits and statements that there had been a mistake in recording what, at the time of the trial, was the jury's finding as to comparative negligence. The evidence warrants the trial court's order directing entry of judgment on the verdict and the consequent judgment dismissing the complaint.

*By the Court.*—Order and judgment affirmed.