STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Jerald WILLIQUETTE, Defendant-Appellant.

Supreme Court

*No. 92–2910–CR.  Oral argument October 13, 1994.—Decided January 19, 1995.*

(Also reported in 526 N.W.2d 144.)

677

For the plaintiff-respondent-petitioner the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief by *James M. Bablitch,* Stevens Point and oral argument by *James M. Bablitch.*

WILCOX, J.   This case involves review of a published decision of the court of appeals, *State v. Williquette,* 180 Wis. 2d 589, 510 N.W.2d 708 (Ct. App. 1993), wherein the court concluded that a circuit court may not entertain a challenge to a jury verdict based on a claimed clerical error of the jury because jurors are not competent to testify on such matters. The issues we consider on review are: (1) whether the Wisconsin Rules of Evidence provide that post-discharge juror testimony is competent to reveal a clerical mistake in the rendition of an otherwise unanimous verdict; and, if so, (2) what is the appropriate burden of proof that a party asserting a clerical error in the jury verdict must show before a circuit court determines that a correction is necessary to achieve justice. We conclude that following the discharge of a jury, the respective jurors are competent to testify as to a clerical mistake in the jury verdict pursuant to the Wisconsin Rules of Evidence. We further conclude that before a circuit court may "correct" a clerical error in a jury verdict, the moving party must present evidence beyond a reasonable doubt that the verdict, as originally reported, is in error. To present evidence beyond a reasonable doubt on this issue, there must be unanimity among the jurors as to the fact that the original verdict was in error.[1]

---

[1] The present case deals with a criminal action. The principles that we express today, however, have equal validity in the realm of civil actions. *See State v. Biller,* 262 Wis. 472, 476–77, 55 N.W.2d 414, 416–17 (1952) (extending rule that allowed affi-

The relevant facts in this case are not in dispute. On August 5, 1991, Jerald L. Williquette was charged in a criminal complaint with two counts of first degree sexual assault of a child, contrary to sec. 948.02, STATS. Specifically, Count I of the complaint alleged that Williquette had sexual intercourse with Kathy L. on or about July 31, 1991. Count II alleged that Williquette had sexual contact with Amanda K. on or between June 1, 1991, and June 30, 1991. On November 7 and 8, 1991, a jury trial was held in Waupaca County Circuit Court, Honorable John P. Hoffmann presiding. On November 8, the jury returned verdicts of guilty as to Count II, the sexual assault of Amanda, and not guilty as to Count I, the sexual assault of Kathy.[2] Kevin Reichenbach, the foreperson of the jury, signed and dated the respective verdicts and they were accepted into the record. The individual jurors were then polled and all assented to the verdicts as reported by the foreperson. The jury was then discharged and judgment was entered on the verdicts.

Several hours later that same day, Reichenbach, Mary Anich, the chief investigator in the Williquette

davit evidence concerning a clerical error in the rendition of a jury verdict in civil actions to criminal actions as well).

[2] For reasons not altogether clear, the verdicts submitted to the jury in this case were not identified with the names of the victims or their respective initials as stated in the criminal information; rather, the verdicts identified only the respective Counts. Consequently, it is easy to see how confusion might arise among the jurors as to which Count represented which alleged victim. This case points up the need for absolute clarity in the verdict form. In order to avoid potential post-verdict problems, we urge trial judges to do everything possible to make separate verdicts and questions clear and distinguishable from each other.

case, and Sarah Binder, the victim witness coordinator for the Waupaca District Attorney's office, were playing volleyball at the Waupaca recreational center. The three discussed the Williquette case. From these discussions, Anich and Binder independently concluded that the jury verdicts had been mistakenly recorded and that the jury actually intended to convict Williquette of the sexual assault of Kathy and acquit him of the sexual assault of Amanda. On November 11, 1991, Binder and Anich conveyed this information to Vicki Taggatz, the prosecutor in the Williquette case. Taggatz then contacted the circuit court and informed the court that there may have been a clerical error in the rendition of the jury's verdict forms.

The circuit court subsequently held a series of inquiries into the question of whether a clerical error had been inadvertently made by the foreperson. Hearings were held on November 13, December 2 and December 13, 1991, at which three of the jurors were questioned. Williquette was not present at these hearings; however, his trial counsel was present. Eight of the nine remaining jurors were questioned on January 29, 1992.[3] During this hearing, both Williquette and his trial counsel were present.

The evidentiary hearings resulted in the following record. Ten jurors indicated that their original verdict had been mistakenly recorded and that they had intended to convict Williquette of the sexual assault of Kathy but to acquit him of the sexual assault of Amanda. One juror testified that she believed that the jury had found Williquette guilty of both offenses.

---

[3] One of the jurors was unable to attend the January 29 hearing due to the fact that he was in the hospital. Consequently, this juror was not questioned on the matter until a postconviction motion hearing held on September 18, 1992.

Based on the testimony of these eleven jurors, the circuit court concluded that: (1) the jurors were competent to testify as to what their true intent was as to the jury verdict; and (2) the court had the authority to change the verdict to reflect a guilty finding on Count I and a not guilty finding on Count II. Specifically, the court explained:

> I think what [the jurors] did testify to, that they are competent to testify that the verdicts were improperly recorded and were not consistent with what their final votes were.
>
> The court under 906.06 has reviewed a series of cases, which includes the *After Hour Welding vs. Laneil Management Company* at 108 Wis. 2d 734. I believe that what these jurors testified to, that the evidence is competent. I believe it demonstrates to this court a substantial ground sufficient to not overturn the verdicts but in effect amend the verdicts, and I believe that should be done because the defendant's rights are not being prejudiced.

Following sentencing, Williquette brought a post-conviction motion requesting a new trial. Williquette sought a new trial on several grounds including an assertion that the circuit court lacked the authority to change the original verdict. The circuit court entertained a hearing on the motion on September 18, 1992. During the hearing, the final juror testified as to his understanding of the verdict. The juror testified that to the best of his recollection there was not a clerical mistake in the jury verdict. At the close of the hearing, the circuit court denied Williquette's motion for a new trial. Williquette then appealed to the court of appeals which reversed in part and affirmed in part. It concluded that the circuit court had no authority to correct the verdict form and, therefore, the verdicts originally

reported by the jury and assented to during polling in open court had to stand. The court of appeals instructed the circuit court on remand to vacate the judgment, reinstate the original verdicts, sentence Williquette on the verdict for which the jury found him guilty, and enter a new judgment of conviction. The court went on to reject Williquette's other challenges to his conviction.

The State filed a petition for review in this court seeking review of that portion of the court of appeals' opinion which reversed the judgment and remanded for resentencing based on the verdict as originally reported by the jury. Specifically, the State took issue with the court of appeals' conclusion that the relevant case law prohibited the circuit court from exercising any authority to correct an allegedly erroneous verdict form based on statements made by the jurors. Williquette opposed the State's petition for review, but filed a cross-petition for review in the event that the State's petition would be granted. In an order dated February 22, 1994, this court granted the State's petition for review but denied Williquette's cross-petition for review.

The issue of a juror's competence to testify about whether a verdict represents the true intent of the jury is an issue this court has previously considered. Almost a century ago, this court addressed the issue in *Wolfgram v. Schoepke,* 123 Wis. 19, 100 N.W. 1054 (1904). In *Wolfgram,* a question arose following a jury trial as to whether the jury foreperson had properly transcribed the jury's verdict in a personal injury case. *Id.* at 20, 100 N.W. at 1055. A special verdict containing twenty questions was returned by the jury with favorable findings for the plaintiff except for question No. 16. *Id.* Question No. 16, "Was plaintiff guilty of any

want of ordinary care?" was answered "Yes." *Id.* The plaintiff produced affidavits from all twelve jurors that their intent was to answer the question "No." *Id.* The jury foreperson's affidavit further explained that the jury had intended to find the plaintiff guilty of no contributory negligence. *Id.* The plaintiff moved for an order changing the answer to question No. 16 from "Yes" to "No." *Id.* at 20–21, 100 N.W. at 1055. The order was denied. *Id.* at 21, 100 N.W. at 1055. The plaintiff then petitioned the circuit court for a new trial based on the mistaken verdict recordation. *Id.* The circuit court granted plaintiff's request for a new trial. *Id.*

On appeal, this court upheld the circuit court's decision to grant a new trial. *Id.* at 24–27, 100 N.W. at 1055–57. At the outset, the court recognized the general rule "that the statements of the jurors will not be received to establish their own misconduct or to impeach their verdict." *Id.* at 24, 100 N.W. at 1056. Thus, the court gave heed to the sanctity of the jury's deliberations and mental processes. Nonetheless, the court noted that many jurisdictions allowed an exception to the rule disallowing juror testimony for "evidence as to what really was the verdict agreed on in order to prove that it has not been correctly expressed, through mistake or otherwise." *Id.* at 25, 100 N.W. at 1056.[4] The court then adopted the "clerical error exception" for Wisconsin:

---

[4] For an overview of the general rule preventing jurors from impeaching their own verdicts see Christopher B. Mueller, *Jurors Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b)*, 57 NEB. L. REV. 920, 920–27 (1978). Mueller notes that although the doctrine offers easy escapes from embarrassing choices, "[c]onvenience . . . is no justification for the principle. It runs against the grain of a democratic soci-

> That which decides the rights of parties litigant is the unanimous agreement of the jurors. Each party is entitled to such judgment as results from that agreement. Any other is presumptively unjust, and any rule that necessitates it is unreasonable, unless supported by considerations of public policy, or of such danger from opening the door to investigation that wrong is likely to be done oftener than the right promoted. We are persuaded that the reasons which should exclude a juror from showing that he made a mistake in reaching his conclusion do not extend to a showing that the words used in conveying it to the court, or enrolling it on the records, by mistake of the person uttering or writing them, fail to express the conclusion reached by all the jurymen. Of course, the showing of the latter fact must be clear beyond peradventure; at least to warrant a change in the written verdict and final judgment thereon. If the slightest doubt lurks in the mind of the court, he should confine relief to the granting of a new trial, which, of course, he may always order when there is reasonable cause to believe that the judgment will do injustice. Some courts incline to the view that a new trial is the only relief after the jury have separated. But the clear weight of authority is that, upon sufficiently clear showing of the mistake, and of what was the verdict agreed on and intended to be expressed, the court may substitute a true expression for the incorrect one, and enter judgment accordingly.

*Id.* at 26, 100 N.W. at 1057 (citations omitted).

The conclusion reached in *Wolfgram* is consistent with a number of jurisdictions that have considered the concept of a clerical error exception to the rule against verdict impeachment. These cases, as did *Wolfgram,*

---

ety to sanction a deliberate attempt to hide from view the imperfections of its institutions." *Id.* at 922.

recognize the distinction between correction of an erroneously reported verdict and inquiry into the jury deliberation process itself. For example, well over a century ago, the Massachusetts Supreme Court explained that attempts to correct verdict error through the submission of juror affidavits are:

> offered only to show a mistake, in the nature of a clerical error, which happened after the deliberations of the jury had ceased, and they had actually agreed on their verdict. The error [consists], not in making up their verdict on wrong principles or on a mistake of facts, but in an omission to state correctly in writing the verdict to which they had, by a due and regular course of proceeding, honestly and fairly arrived.

*Capen v. Inhabitants of Stoughton,* 82 Mass. (16 Gray) 364, 367 (1860). See also *Plummer v. Springfield Terminal Ry. Co., cert. denied,* 5 F.3d 1, 3 (1st Cir. 1993); *United States v. Stauffer,* 922 F.2d 508, 513 n.4 (9th Cir. 1990); *Karl v. Burlington Northern R.R. Co.,* 880 F.2d 68, 73–74 (8th Cir. 1989); *United States v. Dotson,* 817 F.2d 1127, 1130 (5th Cir. 1987); *Young v. United States,* 163 F.2d 187, 189 (10th Cir.), *cert. denied,* 332 U.S. 770 (1947); *Harmon Cable Communications of Nebraska Limited Partnership v. Scope Cable Television, Inc.,* 468 N.W.2d 350, 368–70 (Neb. 1991) (and cases cited therein); Annotation, *Competency of Juror's Statement or Affidavit to Show That Verdict in Civil Case Was Not Correctly Recorded,* 18 A.L.R.3d 1132, § 3 (1968) (discussing cases that accept clerical error exception).[5]

---

[5] Some jurisdictions have refused to adopt a clerical error exception. *See, e.g., Cyr v. Michaud,* 454 A.2d 1376 (Me. 1983); *Roberts v. Kettelle,* 356 A.2d 207 (R.I. 1976); Annotation, *Com-*

Both parties recognize, however, that *Wolfgram* was overruled in 1966 when this court decided *Ford Motor Credit Co. v. Amodt,* 29 Wis. 2d 441, 139 N.W.2d 6 (1966). *Amodt* involved a dispute as to a contract matter. The jury returned a verdict stating that a vehicle sold and delivered to the defendant was not "for new value." *Id.* at 445, 139 N.W.2d at 8. The jury was discharged and judgment was entered on the verdict. *Id.* Subsequently, the defendant moved for a new trial arguing that the jury had actually intended to answer the verdict question in the affirmative, i.e., that the vehicle was delivered "for new value." *Id.* The defendant submitted affidavits on behalf of eight jurors to support his position. *Id.* The trial court granted the defendant's motion for a new trial based in part on the fact that eight of the jurors had submitted affidavits asserting that the verdict was incorrect. *Id.* at 446, 139 N.W.2d at 9. This court reversed, stating:

> We believe that the public-policy reasons which prompted the court to adopt the general rule foreclosing jurors from stultifying their own verdict applies with equal validity to the claim that an answer has been improperly recorded. We now expressly overrule *Wolfgram v. Schoepke* and disavow the exception to the general rule which was made in that case. Once the jury has returned its verdict into court and has been discharged, its members may not be permitted to initiate a challenge to such verdict, whether it be based on their own misconduct or a claimed erroneous recordation.

*Id.* at 449, 139 N.W.2d at 10.

---

*petency of Juror's Statement or Affidavit to Show That Verdict in Civil Was Not Correctly Recorded,* 18 A.L.R.3d 1132, § 4 (1968) (discussing cases that do not accept a clerical error exception).

Although terminating the existence of *Wolfgram's* exception to the general exclusionary rule, the *Amodt* court stated that jurors may be subject to interrogation in situations where the trial court is persuaded:

> (1) that substantial personal awareness of the alleged impropriety is within the direct and independent knowledge of one who did not serve as a member of the jury, (2) that such knowledge was not derived by such person from a juror after the jury's discharge, and (3) that the challenge to the integrity of the verdict originated from such person rather than from a juror. Thus, jurors may sometimes be required to confirm or deny someone else's attack upon their verdict, but they themselves may never embark on a course which will impeach their verdict.

*Id.* at 450–51, 139 N.W.2d at 11.

The State submits, however, that "this court effectively readopted the majority view, as expressed . . . in *Wolfgram,* the day it adopted Ch. 906 of the Evidence Code (effective January 1, 1974). It also, therefore, simultaneously overruled *Ford Motor Credit Co. v. Amodt.*" The State's argument can be summarized as follows. A rule allowing jurors to testify only about clerical errors in the verdict, rather than the deliberation process itself, is consistent with the purpose of ch. 906, STATS. This is evidenced in sec. 906.01, STATS., which states that "[e]very person is competent to be a witness except as . . . otherwise provided in these rules." Although juror testimony is limited by sec. 906.06(2), STATS., that statutory provision does not address, and therefore does not limit, the testimony of a juror regarding clerical errors in the verdict.[6]

---

[6] Section 906.06(2), STATS., provides:

The State supports its argument that ch. 906, STATS., reintroduced the *Wolfgram* clerical error exception with two assertions. First, the Judicial Council Committee's Note to sec. 906.06(2), STATS., explains that the limitations on juror testimony as delineated in *Amodt* were superseded with the adoption of sec. 906.06(2). Second, federal courts interpreting FED. R. EVID. 606(b)—which is substantially identical with sec. 906.06(2)—have interpreted the provision in a manner consistent with allowing juror testimony regarding clerical errors in a jury's verdict.[7] We agree with each of these assertions and discuss them in turn.

**(2)** INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

[7] FED. R. EVID. 606(b) provides:

**(b) Inquiry into Validity of Verdict or Indictment.—** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

690

The relevant portions of the Judicial Council Committee's Note provide:

> Adoption of ss. 906.01 and 906.06(2) is consistent with *Boller v. Cofrances,* 42 Wis. 2d 170, 166 N.W.2d 129 (1969); *Kink v. Combs,* 28 Wis. 2d 65, 135 N.W.2d 789 (1965); *Olson v. Williams,* 270 Wis. 57, 70 N.W.2d 10 (1955); and *Brophy v. Milwaukee E.R. & T. Co.,* 251 Wis. 558, 30 N.W.2d 76 (1947); but would withdraw the limits upon verdict attack in *Miller v. Illinois Central R.R.,* 36 Wis. 2d 184, 152 N.W.2d 898 (1967) and *Ford Motor Credit Co. v. Amodt,* 29 Wis. 2d 441, 139 N.W.2d 6 (1966) . . .. Thus s. 906.06(2) broadens the opportunity for attack upon allegedly improper jury verdicts or indictments. Although the Federal Advisory Committee Note disclaims a change in substantive law, nevertheless a change occurs in Wisconsin substantive law applicable to setting aside verdicts for irregularity because the competency of a juror's testimony, the source of knowledge of impropriety and the challenge to the verdict are interwoven.

The Committee's reference to *Boller, Kink, Olson* and *Brophy* points up the general rule that in most circumstances, a juror may not impeach his or her verdict. However, in both *Kink* and *Brophy,* this court recognized that jurors may provide evidence that a verdict was reported erroneously due to a clerical error. The court stated in *Kink,* "[o]nly in limited cases, *e.g.,* if a verdict is reported erroneously by clerical error, will jurors be heard to complain that the verdict is in error." *Kink,* 28 Wis. 2d at 78, 135 N.W.2d at 796–97. And in *Brophy,* this court explained:

> If a mistake has been made so that the verdict is not correctly reported, then evidence showing what the jury actually did agree on is to be considered. In a

> sense that is not impeaching the verdict, for the verdict is the agreement which the jurors reach in their deliberations and not the written paper which is filed if, through a clerical error or otherwise, that does not express the juror's agreement.

*Brophy,* 251 Wis. at 566, 30 N.W.2d at 80. In asserting that *Kink* and *Brophy* were consistent with the adoption of secs. 906.01 and 906.06(2), STATS., the Committee recognized that allowing juror testimony concerning a clerical error would not be contrary to the purpose of those statutory provisions.[8]

Also of relevance here is the fact that the Committee's Note explains that the adoption of sec. 906.06(2), STATS., had the effect of expressly withdrawing the limits upon verdict attack as set forth in *Miller* and *Amodt.* The Committee further commented that "s. 906.06(2) broadens the opportunity for attack upon allegedly improper jury verdicts or indictments." Although the Committee's Note is not controlling authority, it is certainly persuasive on the question of whether the adoption of sec. 906.06(2) superseded the proscription on juror testimony delineated in *Amodt.* As evidenced in the case of *State v. Hanson,* 149 Wis. 2d 474, 480–83, 439 N.W.2d 133, 136–37 (1989), this court has on prior occasions looked to the Judicial Council Committee's

---

[8] We also note that the *Brophy* case was recently cited with approval by this court in *State v. Messelt,* 185 Wis. 2d 255, 266 n.6, 518 N.W.2d 232 (1994). In *Messelt,* we noted that although Wisconsin has generally "clung to the common law's strict prohibition against a juror giving evidence that might impeach a verdict," *id.* at 266, 518 N.W.2d at 237, there are exceptions such as that set forth in *Brophy,* i.e., "allowing jurors to testify that the verdict reported was not that which the jurors actually agreed upon." *Id.* at 266 n.6, 518 N.W.2d at 237 n.6.

Note for guidance in interpreting the Wisconsin Rules of Evidence.[9]

Further supporting the conclusion that sec. 906.06(2), STATS., does not proscribe juror testimony on the question of a clerical error in the verdict is the corresponding federal case law interpreting FED. R. EVID. 606(b). Several cases are instructive. In *Resolution Trust Corp. v. Stone,* 998 F.2d 1534, 1548 (10th Cir. 1993), the court explained that Rule 606(b) "does not preclude a juror from testifying as to the potential miscommunication of the verdict." The court noted "that it is proper to question jurors to determine exactly what the 'true decision' is." *Id.* In *United States v. Dotson,* 817 F.2d 1127, 1130 (5th Cir. 1987), the court stated that the fifth circuit recognized an exception to rule 606(b)'s general proscription against allowing juror testimony to impeach a verdict. The court cited an earlier fifth circuit opinion explaining that " '[a]n affidavit of a juror is admissible to show that the verdict delivered was not that actually agreed upon . . . but a juror may not subsequently impeach a verdict by stating how it was reached.' " *Id.* (citation omitted).[10] And finally, the Federal Advisory Commit-

---

[9] In *Hanson,* relying extensively on the relevant Judicial Council Committee's Note, we held "that under sec. 906.01, STATS. 1987–88[,] competency is no longer a test for the admission of a witness' testimony except as provided in the [evidentiary] rules." *Hanson,* 149 Wis. 2d at 482, 439 N.W.2d at 136.

[10] As noted by one commentator, the federal courts have distinguished between the impermissible practice of "interrogat[ing] a juror concerning what he meant by his verdict," and the use of a juror's affidavit "to show that the verdict delivered was not that actually agreed upon," which is permitted. Christopher B. Mueller, *Jurors Impeachment of Verdicts and*

tee Note to rule 606(b) notes that "[t]his rule does not purport to specify the substantive grounds for setting aside verdicts for irregularity; it deals only with the competency of jurors to testify concerning those grounds. *Allowing them to testify as to matters other than their own inner reactions involves no particular hazard to the values sought to be protected.*" (Emphasis added.)

In sum, we conclude that the adoption of sec. 906.06(2), STATS., overruled *Amodt* to the extent that the case prohibits any and all attacks on a jury verdict that is based on information derived from a post-discharge juror concerning a clerical error in the verdict.[11] Under sec. 906.01, STATS., a juror is fully competent to testify concerning the possibility of a clerical error except as specifically proscribed in sec. 906.06(2). Consideration of sec. 906.06(2) reveals the limits of juror testimony as to matters relating to an inquiry into the validity of a verdict. Those limits simply do not include a strict proscription on the part of jurors to be compe-

---

*Indictments in Federal Court Under Rule 606(b),* 57 NEB. L. REV. 920, 958 n.149 (1978) (quoting *University Computing Co. v. Lykes-Youngstown Corp.,* 504 F.2d 518, 547 n.43 (5th Cir. 1974)).

[11] Our decision that *Amodt* was overruled with the adoption of sec. 906.06(2), STATS., has a direct effect on several other cases. We specifically overrule *Ziegler v. State,* 65 Wis. 2d 703, 223 N.W.2d 442 (1974); *Boller v. Cofrances,* 42 Wis. 2d 170, 166 N.W.2d 129 (1969); and *Miller v. Illinois Central R.R.,* 36 Wis. 2d 184, 152 N.W.2d 898 (1967), to the extent that those cases rely on *Amodt's* strict prohibition against post-discharge juror testimony concerning evidence of a clerical error in the verdict.

tent as witnesses concerning an incorrect transcription in a jury verdict.[12]

The conclusion we reach today is consistent with the fundamental purposes of the Wisconsin Rules of Evidence. As noted in sec. 901.02, STATS.: "Chapters 901 to 911 shall be construed to secure fairness in administration . . . to the end that the truth may be ascertained and proceedings justly determined." Allowing limited inquiry into the question of whether a verdict is the "true decision" of a jury is in complete harmony with this fundamental purpose. On the other hand, a requirement that an erroneous verdict must always stand, clearly flies in the face of ascertaining truth and justice. In the present case, a ruling in either party's favor has the same effect with respect to the defendant—a guilty charge for first degree sexual assault of a child. It is not difficult, however, to imagine a scenario where an incorrect verdict transcription could result in a serious injustice. The public policy considerations of promoting a jury's freedom of deliberation, the stability and finality of judgments and protecting jurors against annoyance and embarrass-

---

[12] This conclusion is consistent with our recent decision in *State v. Gerard,* 189 Wis. 2d 505, 525 N.W.2d 718 (1995). In *Gerard,* we considered the issue of whether a criminal charging document alleging a repeater status pursuant to sec. 973.12(1), STATS., could be amended to correct an incorrect transcription as to the number of years that a sentence would be enhanced, subsequent to the defendant's having pled not guilty to the charges. *Id.* at 505. We held that "a charging document may be amended post-plea to correct a clerical error in the sentence portion of the penalty enhancement . . .." *Id.* at 509. Although clearly different factually, the *Gerard* case recognizes, as we do here, that clerical errors occasionally occur, and justice requires that they be corrected whenever possible.

ment are indeed noble and must be taken into account; however, these considerations may not completely trump the ascertainment of the "truth" as actually found by the jury.[13]

This court has previously set forth the test that a circuit court must utilize when considering an issue of verdict impeachment. See *After Hour Welding, Inc. v. Laneil Management Co.,* 108 Wis. 2d 734, 738, 324 N.W.2d 686, 689 (1982). In *After Hour Welding,* this court explained that a circuit court must "determine whether the evidence brought to the judge's attention is (1) competent, (2) shows substantive grounds sufficient to overturn the verdict, and (3) shows resulting prejudice." *Id.* We have already considered the first prong of the test, i.e., a juror is competent to testify on matters concerning a clerical error in the jury verdict. As to the second factor, the parties disagree as to what is meant by "substantive grounds sufficient to overturn the verdict." This consideration essentially distills to a question as to what proof a party requesting a correction of an allegedly incorrect jury verdict must present before persuading the trial judge that a clerical error

---

[13] We are indeed cognizant of the policy reasons for proscribing impeachment of the jury verdict except under limited circumstances. We are particularly concerned that a jury remain free from tampering by outside sources once it has been discharged. Our decision today must be read narrowly to allow post-discharge juror evidence concerning a verdict only in situations where there is an allegation of a clerical error. Trial judges must act with extreme care in this area. Any attempt by a party to alter a jury's verdict through pressure or duress under the guise of an alleged clerical error is to be severely condemned. We are confident that the trial judges will use all tools necessary to determine the truth and promote finality.

occurred. We conclude that in the context of verdict impeachment based on an alleged clerical error in the jury verdict, the party requesting a correction of the verdict must present evidence beyond a reasonable doubt that the verdict, as originally reported, is in error. To present such evidence, all of the jurors must be in agreement as to the error.[14] This evidence may be adduced via affidavit, courtroom testimony or any other manner prescribed by the circuit court as long as the evidence's trustworthiness can be assured. We fur-

[14] In making the initial determination as to whether evidence of a clerical error should be introduced, the trial court should consider several factors. One such factor is the amount of time passed since the entry of the verdict. By considering the amount of time elapsed from the rendering of the verdict, "courts will be able to protect the stability and finality of jury verdicts." David A. Christman, Note, *Federal Rule of Evidence 606(b) and the Problem of "Differential" Jury Error*, 67 N.Y.U. L. REV. 802, 836 (1992). Obviously, the more time that has passed following the entry of a verdict, the less likely the trial court should be to entertain evidence on the question of a clerical error. One commentator has suggested allowing evidence to reform a verdict in conformance with the jury's true intent only if the error is discovered within ten days of the entry of the verdict. *See* Timothy C. Rank, Note, *Federal Rule of Evidence 606(b) and the Post-Trial Reformation of Civil Jury Verdicts*, 67 MINN. L. REV. 1421, 1447 (1992). We choose not to set a bright line time limit as to the discovery of the error other than to say that time should be a consideration. A second factor that the trial court should consider is the source of the evidence. "Using the source of evidence as a factor enables courts to disallow evidence procured through harassment or other forms of over-reaching." Christman, *supra*, at 837. *See, e.g., Continental Casualty v. Howard*, 775 F.2d 876, 878 (7th Cir. 1985), *cert. denied*, 475 U.S. 1122 (1986) (affidavit as to jury verdict error was held inadmissible where attorney contacted juror on more than one occasion and in contravention of the court's order).

ther conclude that if the trial judge determines that evidence beyond a reasonable doubt has been presented that the originally reported verdict does not represent the "true decision" of the jury, then he or she has the authority to amend the verdict to confirm the jury's true intentions.[15]

In the present case, the circuit court held a series of hearings over a period of several months. The parties disagree as to whether the procedures utilized by the circuit court during these hearings were appropriate, as well as whether the lapse of some ten months before

[15] Today's pronouncement concerning the appropriate burden of proof in these cases essentially mirrors the standard as set forth by this court in *Wolfgram*. In *Wolfgram*, this court explained that a circuit court could, upon a showing "beyond peradventure" that a clerical error had been made, substitute the true expression of the jury for the incorrect one, or it could, if justice so required, grant a motion for a new trial. Significantly, in *Wolfgram*, all twelve jurors submitted affidavits that the verdict had been incorrectly recorded. The standard prescribed here also comports with the rulings of several other jurisdictions having considered the same issue. *See, e.g., Randall v. Peerless Motor Car Co.,* 99 N.E. 221, 232 (Ma. 1912) (trial court may correct error where all twelve jurors submit affidavits indicating that a clerical error occurred in the reporting of the original verdict); *Colling v. Avon Disposal, Inc.,* 446 N.W.2d 361, 363 (Mich. Ct. App. 1989) (trial court has authority to amend verdict where unanimous mistake of jury in the nature of a clerical error in transcription is shown by the jurors' affidavits or testimony); *Paul v. Pye,* 159 N.W. 1070, 1071 (Minn. 1916) (affidavits of all twelve jurors may be received to show that a clerical error was made in the verdict); *Bozalina v. A.C. Burton & Co.,* 152 S.W.2d 879, 881 (Tex. Civ. App. 1941) ("A unanimous clerical error made in the recording of the verdict of a jury may be shown by affidavits of the jurors.").

all the jurors were questioned was acceptable. We agree with Williquette that in a criminal action, the defendant's attorney should be present at any hearing concerning the possibility of a clerical error in the verdict. We do not agree with Williquette, however, that a defendant must also be present at each hearing. The best practice, of course, is to have the defendant, or the party against whom a correction of the verdict may effect, present at any and all hearings on the issue. This may in some situations, however, prove impractical. We leave this determination to the discretion of the circuit court.

As to the time lapse, there is little doubt that a problem arose in this case due to the fact that not all the jurors were questioned at the same time, nor were they questioned promptly after discovery of the alleged clerical error. As is evidenced by this case, the greater the length between the time of questioning and the jury trial, the more troublesome it is for jurors to have precise recall of the events at trial. While we recognize the logistical difficulties of summoning all twelve jurors at the same time, nonetheless, a delay of some ten months for the testimony of the final juror was too long. Without attributing blame, we point out that it is the duty of the party requesting the correction of the verdict to *promptly* bring all of the evidence to the attention of the circuit court. At that point, it is then the responsibility of the circuit court to expeditiously address the matter. By promptly questioning the jurors on such matters, the problems of faulty recollection can be obviated.

Applying the standard we enunciate today to the facts at hand, it is apparent that the circuit court erred

in "amending" the verdict as originally reported by the jury. Only ten of the jurors presented unequivocal evidence that the verdict as reported was incorrect. One juror thought that the jury had convicted Williquette on both counts and another juror could not recall what the verdict had been other than to say that he believed it had been recorded correctly. Under these circumstances, we conclude that the circuit court did not have evidence beyond a reasonable doubt that the jury had unanimously convicted Williquette of sexually assaulting Kathy while acquitting him of sexually assaulting Amanda. Consequently, the second prong of the test set forth in *After Hour Welding, Inc.* was not met. The case must therefore be remanded to the circuit court for a resentencing of Williquette based on his conviction as reported in the original verdict—the sexual assault of Amanda.

*By the Court.*—The decision of the court of appeals is affirmed and the case is remanded for further proceedings consistent with this opinion.

JUSTICE WILLIAM A. BABLITCH, took no part in this opinion.