GRICE ENGINEERING, INC., Plaintiff-Respondent,

v.

Kathleen M. SZYJEWSKI d/b/a Kath's Office,
Defendant-Appellant.†

99–CV-1051

Kathleen SZYJEWSKI, Plaintiff, ·

v.

Gordon J. "Jack" GRICE and Tyra Jacobson,
Defendants.

Court of Appeals

*No. 01–0073. Submitted on briefs July 9, 2001.—Decided
April 11, 2002.*

2002 WI App 104

(Also reported in 648 N.W.2d 487.)

† Petition to review denied 9-26-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel G. Jardine* of *Murphy & Desmond, S.C.*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Margery Mebane Tibbetts* of *Brennan, Steil, Basting & MacDougall, S.C.*, Janesville.

Before Dykman, Roggensack and Lundsten, JJ.

¶ 1.  LUNDSTEN, J.  This case involves an allegation of clerical error in a jury verdict. Grice Engineering claimed in a post-trial motion that the jury foreperson inadvertently wrote "$2400.00" as the answer to a verdict question when the jurors had actually agreed on $24,000.00. The trial court received evidence, concluded that Grice Engineering had met its burden of proving clerical error, corrected the verdict, and entered judgment incorporating the corrected $24,000.00 figure. Kathleen Szyjewski asserts the trial court erred in several respects. We reject her arguments and affirm the trial court.

## Background

¶ 2.  Szyjewski was a bookkeeper for Grice Engineering. Grice Engineering sued Szyjewski, claiming misrepresentation and breach of fiduciary duties. A jury

trial was held on April 17, 18, 19, and 20, 2000. The twelve-member jury found that Szyjewski had misrepresented her job qualifications and had breached her fiduciary duties to Grice Engineering.[1]

¶ 3. A series of verdict questions asked the jurors to determine amounts of money needed to compensate Grice Engineering. Verdict question 9 asked: "What amount of damages did Grice Engineering, Inc. incur which are attributable to payments Kathleen Szyjewski made to herself, for which she was not entitled." The jury foreperson filled in "$2400.00" with no comma. The verdict form shows that no juror dissented from this finding. When the trial court read the twelve answers to the verdict questions relating to Grice Engineering's claims, including this $2,400 figure, no juror spoke up to suggest there had been a mistake. The jury was not polled.

¶ 4. Prior to jury deliberations during closing arguments, the attorney for Grice Engineering argued that question 9 should be answered $25,858.75, an amount constituting "deleted checks that [Szyjewski] was not entitled to" and the "electronic transfers which were not authorized and recorded."

¶ 5. On Friday, June 2, 2000, six weeks after the verdict was announced, a person anonymously telephoned the law firm representing Grice Engineering and asserted that the jury's answer to one of the verdict questions was actually $24,000 rather than $2,400.[2] The following week, the law firm began contacting

---

[1] Szyjewski counter-claimed, alleging defamation, and all claims were tried together. Szyjewski has not appealed her unfavorable result relating to the defamation claim.

[2] Counsel for Grice Engineering provided this information and actually said "25,000" and "2,500." However, in context, it is

jurors. Eventually, the firm obtained sworn statements from eleven jurors. Starting on June 9, 2000, and ending on June 16, 2000, ten jurors signed a joint affidavit stating that they had reviewed a copy of the jury verdict form and there was an error. The affidavit stated that the jurors unanimously agreed during deliberations that question 9 should be answered $24,000 and that the $2,400 figure on the verdict form was an error. The jury foreperson signed a separate affidavit on June 16, 2000, stating that the jury unanimously agreed that the answer to verdict question 9 was $24,000, that she had reviewed a copy of the verdict form and that the verdict form mistakenly indicated $2,400. Grice Engineering contacted the twelfth juror, but he declined to sign the affidavit.

¶ 6. On June 19, 2000, Grice Engineering moved the circuit court to change the answer to verdict question 9 from $2,400 to $24,000. At the motion hearing, Grice Engineering produced the twelfth juror, who testified that he had been asked to sign the joint affidavit, but declined because "all my life, unless I'm sure of something, I don't sign anything." He said he declined to sign the affidavit because he was not sure whether the assertions in it were true and he was currently still uncertain. However, he also testified that he suspected there had been a mistake with respect to question 9 and guessed the correct figure was $24,000 rather than $2,400. He also testified that, whatever the jury's answer to question 9, it had been a unanimous decision.

---

evident he misspoke and that everyone at the hearing understood him to be referring to "24,000" and "2,400."

¶ 7.  At the same hearing, Szyjewski offered testimony from a private investigator regarding statements made by one of the jurors who signed the joint affidavit. The circuit court ruled that the investigator's testimony was hearsay, but heard his testimony in the form of an offer of proof. The investigator testified that he spoke to the juror by telephone prior to the time she signed the joint affidavit and she told him she had "no idea" whether the $2,400 figure should have been $24,000.[3]

¶ 8.  At the conclusion of the hearing, the circuit court rejected Szyjewski's argument that the jurors' affidavits were unreliable because of the seven-week time lapse between the verdict and when the jurors were contacted. The court found that Grice Engineering acted promptly after learning of the possible problem and that the time lapse was not, as a matter of "public policy," too long. The court concluded that Grice Engineering had met its burden of proof because eleven jurors swore in affidavits that the correct figure was $24,000 and because the twelfth juror, though uncertain about the amount, was "unequivocal" in stating that the verdict had been unanimous. Accordingly, the circuit court granted the motion to correct the verdict and later entered judgment incorporating the correction.

### Discussion

¶ 9.  Szyjewski contends that the circuit court erroneously granted Grice Engineering's post-trial motion seeking verdict correction. The motion asserted

---

[3] After the circuit court disallowed the investigator's testimony, Szyjewski asked for a continuance to present testimony directly from this juror. That request was denied and Szyjewski does not raise this denial as an issue on appeal.

that the jury foreperson made a "clerical error" when recording the jury's answer to verdict question 9. Grice Engineering supported its motion with affidavits from jurors asserting that the unanimous answer to question 9 was $24,000, not $2,400 as reported on the verdict form. Grice Engineering relied on *State v. Williquette*, 190 Wis. 2d 677, 526 N.W.2d 144 (1995), which held that if a trial judge "determines that evidence beyond a reasonable doubt has been presented that the originally reported verdict does not represent the 'true decision' of the jury, then he or she has the authority to amend the verdict to confirm the jury's true intentions." *Id.* at 698.

¶ 10.   The parties agree that this case turns on the proper application of *Williquette* to the facts here. Although *Williquette* is a criminal case, the principles expressed in that decision have "equal validity in the realm of civil actions." *Id.* at 680 n.1. Thus, we begin with a brief discussion of *Williquette* and verdict correction.

¶ 11.   In *Williquette*, the supreme court applied the prerequisites for "verdict impeachment" to verdict correction based on clerical error. Those prerequisites, as applied to verdict correction, are: (1) the presentation of competent evidence, (2) a showing of "substantive grounds sufficient to" permit correction of the clerical error, and (3) a showing of resulting prejudice. *Id.* at 696 (citation omitted).[4] The first issue, compe-

---

[4] In this opinion, we use the term "verdict correction," rather than "verdict impeachment," because the jury's actual verdict has not been challenged. The question here, as in *Williquette*, is whether the circuit court properly corrected the recorded verdict to match the true verdict. *See State v. Biller*, 262 Wis. 472, 476, 55 N.W.2d 414 (1952) (correcting a wrongly recorded verdict " '[i]n a sense . . . is not impeaching the verdict, for the verdict is the agreement which the jurors reach . . . and

tency of the evidence, frequently involves the application of WIS. STAT. § 906.06(2).[5]

¶ 12. WISCONSIN STAT. § 906.06(2) broadly prohibits evidence of anything said or done during jury deliberations. *See State v. Marhal*, 172 Wis. 2d 491, 495–96, 493 N.W.2d 758 (Ct. App. 1992). This rule discourages juror harassment by disappointed litigants, furthers free and open discussion among jurors, reduces the incentive for jury tampering, promotes verdict finality, and helps maintain the jury's viability "as a judicial decision-making body." *State v. Shillcutt*, 119 Wis. 2d 788, 794, 350 N.W.2d 686 (1984). The purposes behind § 906.06(2) are so compelling that it applies even when it acts to exclude evidence showing that something went wrong in the jury process. The recog-

---

not the written paper . . . .' " (quoting *Brophy v. Milwaukee Elec. Ry. & Transp. Co.*, 251 Wis. 558, 566, 30 N.W.2d 76 (1947))).

[5] WISCONSIN STAT. § 906.06(2) (1999–2000) provides:

**906.06 Competency of juror as witness** . . . .

(2) INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

All further references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

nized general rule is " 'that the statements of the jurors will not be received to establish their own misconduct or to impeach their verdict.' " *Williquette*, 190 Wis. 2d at 685, quoting *Wolfgram v. Town of Schoepke*, 123 Wis. 19, 24, 100 N.W. 1054 (1904); *see also Kink v. Combs*, 28 Wis. 2d 65, 77–78, 135 N.W.2d 789 (1965) (evidence that juror only agreed to verdict because of fatigue is not admissible); *Tanner v. United States*, 483 U.S. 107, 121–26 (1987) (applying the federal counterpart rule to exclude evidence that jurors used drugs or alcohol).

¶ 13. The *Williquette* court first addressed whether juror statements regarding the accuracy of a verdict were competent evidence and held that Wis. Stat. § 906.06(2) does not prohibit evidence from jurors regarding clerical error "except as specifically proscribed in sec. 906.06(2)." *Williquette*, 190 Wis. 2d at 694. For example, a party may present evidence that a juror thinks a true verdict is different from the one recorded, but may not present evidence that this juror's belief is based on the juror's memory of arguing about the verdict with another juror during deliberations. The latter invades the sanctity of deliberations and does not fall within an exception to § 906.06(2). In this case, the parties agree the affidavits and testimony presented by Grice Engineering were not prohibited by § 906.06(2) and that they were "competent" evidence as that term is used in *Williquette*.

¶ 14. What is in dispute is the application of *Williquette* with respect to whether Grice Engineering presented "substantive grounds sufficient to" permit correction of the verdict. *See Williquette*, 190 Wis. 2d at 696 (citation omitted). This factor examines what proof the party seeking correction must present to persuade the trial judge that a clerical error occurred. *Id.* at 696–97. Szyjewski asserts the circuit court's decision

was based on insufficient proof. First, she challenges the admission of the juror affidavits based on the passage of time between rendering of the verdict and the execution of the affidavits. Second, she argues that even if too much time had not passed, Grice Engineering failed to meet the beyond-a-reasonable-doubt standard because it failed to show that all twelve jurors agreed on the correction. For the reasons that follow, we reject Szyjewski's arguments and affirm the circuit court.

### Trustworthiness of the Affidavits

¶ 15.  Szyjewski argues that the juror affidavits do not meet the trustworthiness standard required by *Williquette*. She asserts the seven- to eight-week time lag between the return of the verdict and when Grice Engineering obtained the affidavits renders the affidavits insufficiently trustworthy. We disagree.

¶ 16.  We first observe that the appellate standard of review of a circuit court's decision on trustworthiness is not apparent from the *Williquette* decision. The parties here argue about the standard of review, but provide no authority that helps us resolve the question. Regardless, we conclude that we would affirm the circuit court's trustworthiness ruling under either a deferential or *de novo* standard of review.

¶ 17.  The *Williquette* court held that evidence of clerical error "may be adduced via affidavit, courtroom testimony or any other manner prescribed by the circuit court as long as the evidence's trustworthiness can be assured." *Id*. at 697. The court explained that when making the "initial determination" on the admission of such evidence, one factor to be considered is the amount of time that has passed since the verdict was

753

rendered. *Id.* at 697 n.14. The more time that passes "following the entry of a verdict, the less likely the trial court should be to entertain evidence" of clerical error. *Id.* The *Williquette* court noted that at least one commentator had suggested a ten-day time limit, but the court rejected this type of bright-line approach. Instead, the court simply directed trial courts to consider time as a factor. *Id.*

■■■■

¶ 18. It is evident from *Williquette* that a key trustworthiness factor is time and, in turn, an important time factor is whether the amount of time casts doubt on the reliability of the jurors' recollections. However, the court also indicated that the party seeking correction must act promptly. *See id.* at 699. One reason the court rejected the attempt to amend the verdict in *Williquette* was that the party seeking a correction did not promptly present the jurors for questioning after discovering there might have been an error. *See id.* Although the possible error was discovered the day the verdict was returned, the last juror was not questioned until ten months after the verdict. *Id.* at 681–82 & n.3.[6] We glean from this discussion in *Williquette* that

---

[6] The *Williquette* court talks only about the amount of time from when the verdicts were returned until the jurors were questioned in court. The decision does not tell us whether the jurors made assertions regarding the verdict sooner. We assume that if there were evidence of earlier questioning or assertions in the case, the *Williquette* court concluded it was insubstantial for purposes of assessing the time lag. We observe, however, that if a juror is questioned promptly after the return of a verdict and asserts the recorded verdict was wrong, and then much later asserts in an affidavit or in court that he or she promptly affirmed to an investigator that there had been an error, this is information a court may take into account in assessing time lag.

prompt action after discovery of a possible verdict error does not necessarily weigh in favor of the party seeking correction. For example, even prompt action a very long time after a verdict is returned may not lead to the correction of clerical error. At the same time, a party discovering a possible problem has a duty to act promptly and a court may hold the failure to act promptly against a party seeking to correct a verdict.

¶ 19.   We now apply the above principles and observations to the case at hand.

¶ 20.   First, the record shows that Grice Engineering acted promptly when it learned there might have been clerical error. It received an anonymous call on a Friday, six weeks after the verdict, and began contacting jurors the following week. Within two weeks, Grice Engineering had contacted and obtained sworn statements from eleven jurors. This stands in sharp contrast to the "delay of some ten months" in *Williquette, id.* at 699, where neither party acted promptly after discovering a potential problem.[7]

¶ 21.   Second, Szyjewski does not raise any specific concerns related to the facts in this case. She simply

---

[7] In her reply brief, Szyjewski argues that Grice Engineering presented no evidence showing when or even that Grice Engineering learned of a possible problem from an anonymous caller. This argument was waived. It is true that the anonymous call and the date of the call were established at the hearing based on the assertion of an attorney for Grice Engineering, but Szyjewski never hinted that this fact was in dispute and did not object when the circuit court implicitly incorporated the assertion into its findings of fact for purposes of concluding that Grice Engineering acted promptly. Indeed, Szyjewski's counsel incorporated the anonymous caller assertion into his own argument at that hearing, asserting that both sides learned of the possible problem from an anonymous caller at about the same time.

argues that the "period of 7–8 weeks falls *way* behind any [reasonable] line." In effect, Szyjewski is arguing for a "bright line." That is, she contends that a line should be drawn at eight weeks, perhaps shorter, but at least at eight weeks. However, there is nothing inherently excessive about a seven- to eight-week time period. The supreme court in *Williquette* declined to adopt a bright-line approach, and we follow that court's lead in rejecting Szyjewski's proposal.

¶ 22.   In addition, we note there are several circumstances suggesting the correction is accurate. The difference between the reported answer to verdict question 9 and the corrected answer is very large, both considered in isolation and in the context of the other damages awarded, none of which exceeded $3,200. There is nothing suspect about the fact that jurors would recall, even several weeks later, that they voted for the much larger amount when answering question 9. Also, the verdict was returned just after midnight of the fourth day of trial. Under this circumstance, it is understandable that the jury foreperson mistakenly wrote "$2400.00" instead of "$24000.00." Likewise, it is understandable that when the trial judge read the jury's twelve answers relating to Grice Engineering's claims, including eight monetary amounts, at the end of such a long day, no juror noticed or spoke up to say there had been an error. Finally, the $24,000 figure approximates the $25,858.75 figure suggested as an answer to question 9 during closing argument by counsel for Grice Engineering.

¶ 23.   Accordingly, we conclude the circuit court properly relied on the juror affidavits, despite the seven- to eight-week time lag between the verdict return and the execution of the affidavits.

¶ 24. Szyjewski next argues that even if the seven- to eight-week time lag did not render the affidavits untrustworthy, the trial court nonetheless erred because all twelve jurors did not assert that the true answer to verdict question 9 was $24,000. Szyjewski accurately states that one juror merely guessed that the true amount was $24,000. She contends *Williquette* requires that *all* of the jurors give trustworthy statements on the details of the correction. Grice Engineering responds that the circuit court correctly analyzed the situation when it found that the true verdict answer, beyond a reasonable doubt, was $24,000 based on the affidavits of eleven jurors and the testimony of the twelfth juror that, while he was not sure about the $24,000 figure, he was sure the answer to the verdict question had been unanimous.

¶ 25. We have considered all of the arguments presented and conclude that one of the arguments advanced by Grice Engineering at the post-trial hearing is the most persuasive. Grice Engineering argued that because this is a civil case requiring only five-sixths of the jurors to agree on a verdict, it needed to present supporting affidavits from just five-sixths of the jurors.

¶ 26. It is true that the *Williquette* court held that a party requesting correction of a clerical error in a jury verdict "must present evidence beyond a reasonable doubt that the verdict, as originally reported, is in error," and also true that the court said this meant showing that "all of the jurors [are] in agreement as to the error." *Williquette*, 190 Wis. 2d at 697. However, *Williquette* was a criminal case and this is a civil case, a difference that matters.

¶ 27. Verdicts in criminal cases must be unanimous. *See State v. Johnson*, 2001 WI 52, ¶ 11, 243 Wis. 2d 365, 627 N.W.2d 455. In contrast, civil cases require agreement of five-sixths of the jurors. Wis. Const. art. I, § 5; Wis. Stat. § 805.09(2).[8] When a civil case is tried before twelve jurors, the answer to each verdict question needs the agreement of the same ten jurors. It follows, we believe, that proof beyond a reasonable doubt in the civil jury trial context may be supplied by showing that five-sixths of the jurors agree the reported verdict is in error and agree on the corrected verdict, provided each of these jurors was a part of the original group in favor of the verdict. This approach meets the "all of the jurors" requirement in *Williquette*. *See Williquette*, 190 Wis. 2d at 697.

¶ 28. Szyjewski's contrary interpretation of *Williquette* would open the door to mischief. Under her view, a juror who did not join the verdict could derail the decision of five-sixths of the jurors by disagreeing with a verdict correction. For that matter, a juror who joined the verdict, but whose vote was not needed to meet the five-sixths requirement, could spoil a correction. If such a juror's vote was not needed in the first place, then it hardly makes sense to give that juror the power to undermine the verdict of the five-sixths after the fact.

¶ 29. Therefore, the proper application of *Williquette* in a civil context means that five-sixths of the jurors "must be in agreement as to the error," provided each of these jurors was a part of the original group in

---

[8] Wisconsin Stat. § 805.09(2) provides, in part: "A verdict agreed to by five-sixths of the jurors shall be the verdict of the jury."

favor of the verdict. *See Williquette*, 190 Wis. 2d at 697. Here, regardless of other arguments made by Szyjewski, it is undisputed that the twelve jurors unanimously answered verdict question 9 and that Grice Engineering presented uncontested affidavits from ten of the jurors that the correct answer to question 9 was $24,000.[9]

*By the Court.*—Judgment affirmed.

¶ 30. ROGGENSACK, J. (*concurring*). The majority applies the beyond a reasonable doubt standard in this civil case as the quantum of proof required to correct a jury's answer to a question on a special verdict. Majority at ¶ 27. I write separately to note that the parties have not suggested that a different standard applies in this civil context; therefore, we do not decide whether a lower burden of proof is sufficient.[1] I observe

---

[9] Because we hold that Grice Engineering met its burden by presenting sworn statements from five-sixths of the jurors, we need not address Szyjewski's complaint that the circuit court erroneously excluded testimony from her investigator offered to cast doubt on the accuracy of the eleventh sworn statement.

[1] To the extent that the majority opinion incorporates the burden used in *State v. Williquette*, 190 Wis. 2d 677, 526 N.W.2d 144 (1995), which also applied the beyond a reasonable doubt burden of proof for the correction of a jury verdict, I note that the burden of proof was applied to determine whether Williquette sexually assaulted a victim other than the victim reported on the verdict. Conviction of a crime always requires proof beyond a reasonable doubt. Therefore, the court's opinion did not focus on the burden it applied to the requested verdict change, nor did it change its past precedent in regard to the burden of proof required to overturn a criminal conviction. Instead, the court, as it reasoned to a conclusion that all twelve jurors must be in agreement in order to change a verdict in a criminal case that resulted in the conviction of a different crime, applied the beyond a reasonable doubt burden without

that the supreme court has, in a civil context, applied the clear and convincing burden of proof to verdict impeachment based on alleged extraneous information. *After Hour Welding, Inc. v. Laneil Mgmt. Co.*, 108 Wis. 2d 734, 744, 324 N.W.2d 686, 692 (1982) (changing an answer to a question in a special verdict requires clear and convincing proof that extraneous, prejudicial information was improperly brought to the jury's attention). Additionally, when the evidence of jury misconduct is competent, a court must be persuaded only by "clear and satisfactory" proof that a juror engaged in misconduct in order to overturn a criminal conviction. *State v. Eison*, 194 Wis. 2d 160, 177, 533 N.W.2d 738, 744 (1995). Accordingly, I concur in the result, but not in the majority's application of the beyond a reasonable doubt burden of proof.

■

discussion. *Id.* at 696–98, 526 N.W.2d at 151–52. It should be noted that there is ample supreme court precedent showing that a lesser quantum of proof is sufficient to change a jury's verdict when the change does not result in the conviction of a crime. *See State v. Eison*, 194 Wis. 2d 160, 177, 533 N.W.2d 738, 744 (1995); *State v. Messelt*, 185 Wis. 2d 254, 281, 518 N.W.2d 232, 243 (1994); *After Hour Welding, Inc. v. Laneil Mgmt. Co.*, 108 Wis. 2d 734, 744, 324 N.W.2d 686, 692 (1982). *See also State v. Broomfield*, 223 Wis. 2d 465, 479, 589 N.W.2d 225, 231 (1999) (decided after *Williquette* and relying on "clear, satisfactory, and convincing evidence" as that quantum of proof required for a finding of jury misconduct).